**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

ARCELORMITTAL NORTH AMERICA
HOLDINGS LLC

        *Plaintiff,*

v.

ESSAR GLOBAL FUND LIMITED,

        *Defendant,*

and

MESABI METALLICS COMPANY LLC
f/k/a ESSAR STEEL MINNESOTA LLC,

        *Garnishee.*

Case No.: 21-cv-06975-KPF

Honorable Katherine Polk Failla

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT AND GARNISHEE'S**
**MOTION TO DISMISS FOR *FORUM NON CONVENIENS* AND ADJUDICATIVE**
**COMITY**

Rollo C. Baker
Todd Beattie
QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
212-849-7000 (voice)
212-849-7100 (fax)

*Attorneys for Defendant Essar Global Fund*
*Limited and Garnishee Mesabi Metallics*
*Company LLC*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .................................................................................. 1

FACTUAL BACKGROUND ..................................................................................... 3

    A.    Essar Steel Planned And Executed The Challenged Foreign Transactions
With Essar Global Years Before Essar Steel Contracted With AMUSA ............. 4

    B.    The Pellet Sale Agreements And Arbitration ....................................................... 6

    C.    After Unsuccessfully Prosecuting Its Claims In Three Other Jurisdictions,
AMNAH Files Suit Here ...................................................................................... 7

ARGUMENT ........................................................................................................... 11

I.     THE ACTION SHOULD BE DISMISSED FOR *FORUM NON CONVENIENS* .......... 11

    A.    Plaintiff's Choice Of Forum Is Motivated By Forum Shopping And
Should Receive Minimal Deference ................................................................... 11

    B.    England And Mauritius Are Adequate Alternate Fora ........................................ 18

    C.    The Public Interest Factors Compel Dismissal ................................................... 21

    D.    The Private Interest Factors Strongly Support Dismissal .................................... 25

II.    THIS ACTION SHOULD BE DISMISSED IN LIGHT OF SUBSTANTIVELY
IDENTICAL PRIOR-FILED PENDING FOREIGN PROCEEDINGS ........................ 28

    A.    The Parties And Issues Are Substantially Similar In The First-Filed
Foreign Proceedings .......................................................................................... 29

    B.    Judicial Economy Strongly Favors Abstention ................................................... 31

    C.    Litigating Here Is Inconvenient And Prejudicial To Essar Global ...................... 32

    D.    Additional Exceptional Circumstances Warrant Abstention .............................. 33

    E.    At A Minimum, This Court Should Stay This Action Pending Resolution
Of The Foreign Proceedings .............................................................................. 34

CONCLUSION ......................................................................................................... 35

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Abert Trading, Inc. v. Kipling Belgium N.V/S.A.*,
  2002 WL 272408 (S.D.N.Y. Feb. 26, 2002) ................................................................. 22

*Acosta v. JPMorgan Chase & Co.*,
  219 F. App'x 83 (2d Cir. 2007) ......................................................................... 13, 14, 15

*Advantage Int'l Mgmt., Inc. v. Martinez*,
  1994 WL 482114 (S.D.N.Y. Sept. 7, 1994) ........................................................... 31

*Aenergy, S.A. v. Republic of Angola*,
  2021 WL 1998725 (S.D.N.Y. May 19, 2021) ........................................... 12, 18, 24

*Alcoa Steamship Co. v. M/V Nordic Regent*,
  654 F.2d 147 (2d Cir. 1980) ................................................................................. 20

*In re Arb. between Monegasque De Reassurances S.A.M. v. Nak Naftogaz of Ukraine*,
  311 F.3d 488 (2d Cir. 2002) ............................................ 13, 20, 21, 23, 24, 25, 27, 34

*Argus Media Ltd. v. Tradition Fin. Servs.*,
  2009 WL 5125113 (S.D.N.Y. Dec. 29, 2009) ........................................................ 32

*Atsco Ltd. v. Swanson*,
  816 N.Y.S.2d 31 (1st Dep't 2006) ........................................................................ 23

*Banco de Serguros del Estado v. J.P. Morgan Chase & Co.*,
  500 F. Supp. 2d 251 (S.D.N.Y. 2007) .................................................................. 12

*Base Metal Trading SA v. Russian Aluminum*,
  253 F. Supp. 2d 681 (S.D.N.Y. 2003) ............................................................. 12, 13

*BFI Grp. Divino Corp. v. JSC Russian Aluminum*,
  298 F. App'x 87 (2d Cir. 2008) ........................................................................... 17

*Blanco v. Banco Indus. de Venez., S.A.*,
  997 F.2d 974 (2d Cir. 1993) ................................................................................. 23

*Carey v. Bayerische Hypo-Und Vereinsbank AG*,
  370 F.3d 234 (2d Cir. 2004) ................................................................................. 17

*Caspian Invs. Ltd. v. Vicom Holdings, Ltd.*,
  770 F. Supp. 880 (S.D.N.Y. 1991) ....................................................................... 31

*CHS Eur. S.A. v. El Attal*,
    2010 WL 3000059 (S.D.N.Y. July 22, 2010) .............................................................. 24, 25

*Dattner v. Conagra Foods, Inc.*,
    91 F. App'x 179 (2d Cir. 2004) ................................................................................... 17

*Diatronics, Inc. v. Elbit Computers, Ltd.*,
    649 F. Supp. 122 (S.D.N.Y. 1986), *aff'd*, 812 F.2d 712 (2d Cir. 1987)............................... 21

*In re Ephedra Prod. Liab. Litig.*,
    349 B.R. 333 (S.D.N.Y. 2006)..................................................................................... 12

*Essar Glob. Fund Ltd. v. Roberts-Davis*,
    2020 WL 3172844 (Minn. Ct. App. June 15, 2020)........................................................ 21

*Evergreen Marine Corp. v. Welgrow Int'l, Inc.*,
    954 F. Supp. 101 (S.D.N.Y. 1997) ............................................................................... 33

*Fasano v. Guoqing Li*,
    482 F. Supp. 3d 158 (S.D.N.Y. 2020) ..................................................................... 15, 23

*Figueiredo Ferraz E Engenharia de Projeto Ltda. v. Republic of Peru*,
    665 F.3d 384 (2d Cir. 2011) ...............................................................................18, 20, 24

*Fletcher v. Atex, Inc.*,
    68 F.3d 1451 (2d Cir. 1995) ....................................................................................... 23

*Freund v. Republic of France*,
    592 F. Supp. 2d 540 (S.D.N.Y. 2008), *aff'd*, 319 F. App'x 939 (2d Cir. 2010) ................... 29

*Galley Schuler v. Rainforest All., Inc.*,
    161 F. Supp. 3d 298 (D. Vt. 2016), *aff'd*, 684 F. App'x 77 (2d Cir. 2017).................... 31, 34

*Gilstrap v. Radianz Ltd.*,
    443 F. Supp. 2d 474 (S.D.N.Y. 2006), *aff'd*, 233 F. App'x 83 (2d Cir. 2007) ..................... 18

*Gulf Oil Corp. v. Gilbert*,
    330 U.S. 501 (1947).................................................................................................. 25

*In re Herald*,
    540 F. App'x 19 (2d Cir. 2013) ................................................................................... 28

*In re Herald, Primeo, & Thema Sec. Litig.*,
    2011 WL 5928952 (S.D.N.Y. Nov. 29, 2011), *aff'd*, 730 F.3d 112 (2d Cir. 2013) .............. 21

*Ionnides v. Marika Maritime Corp.*,
    928 F. Supp. 374 (S.D.N.Y. 1996)............................................................................... 23

*Iragorri v. United Techs. Corp.*,
   274 F.3d 65 (2d Cir. 2001)..........................................................................11, 12, 25

*JW Oilfield Equip., LLC v. Commerzbank, AG*,
   764 F. Supp. 2d 587 (S.D.N.Y. 2011) .......................................................... 29

*Kalb, Voorhis & Co. v. Am. Fin. Corp.*,
   8 F.3d 130 (2d Cir. 1993)................................................................................ 23

*Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*,
   335 F.3d 357 (5th Cir. 2003).......................................................................... 34

*Kingstown Cap. Mgmt., L.P. v. Vitek*,
   2020 WL 5350492 (S.D.N.Y. Sept. 4, 2020)......................... 12, 16, 17, 30, 33, 34

*Kirch v. Liberty Media Corp.*,
   2006 WL 3247363 (S.D.N.Y. Nov. 8, 2006) ................................................. 16

*LaSala v. TSB Bank, PLC*,
   514 F. Supp. 2d 447 (S.D.N.Y. 2007) .......................................................... 23

*Lfoundry Rousset SAS v. Atmel Corp.*,
   2015 WL 4461617 (S.D.N.Y. July 21, 2015), *aff'd sub nom.*
   *Guerrini v. Atmel Corp.*, 667 F. App'x 308 (2d Cir. 2016) .................................. 15

*Louis Vuitton N. Am., Inc. v. Schenker S.A.*,
   2019 WL 1507792 (E.D.N.Y. Mar. 31, 2019) .......................................... 31, 33

*Lyman Com. Sols., Inc. v. Lung*,
   2014 WL 476307 (S.D.N.Y. Feb. 6, 2014)................................................. 22, 23

*Magi XXI, Inc. v. Stato*,
   714 F.3d 714 (2d Cir. 2013)............................................................................ 15

*MLC (Bermuda) Ltd. v. Credit Suisse First Boston Corp.*,
   46 F. Supp. 2d 249 (S.D.N.Y. 1999) ............................................................ 31

*Mujica v. AirScan Inc.*,
   771 F.3d 580 (9th Cir. 2014).......................................................................... 29

*Murray v. Brit. Broad. Corp.*,
   81 F.3d 287 (2d Cir. 1996).............................................................................. 24

*Niv v. Hilton Hotels Corp.*,
   710 F. Supp. 2d 328 (S.D.N.Y. 2008), *aff'd,* 358 F. App'x 282 (2d Cir. 2009) .................... 16

*Ole Media Mgmt., L.P. v. EMI Apr. Music, Inc.*,
   2013 WL 2531277 (S.D.N.Y. June 10, 2013)............................... 28, 30, 32, 33, 34

*Osuna v. Citigroup Inc.*,
  2018 WL 6547205 (S.D.N.Y. Sept. 28, 2018) ................................................. 24

*Otor, S.A. v. Credit Lyonnais, S.A.*,
  2006 WL 2613775 (S.D.N.Y. Sept. 11, 2006) ................................................. 21

*Owens v. Turkiye Halk Bankasi A.S.*,
  2021 WL 638975 (S.D.N.Y. Feb. 16, 2021) ................................................... 27

*In re Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec. LLC*,
  917 F.3d 85 (2d Cir. 2019) ...................................................... 28, 29, 33

*Piper Aircraft Co. v. Reyno*,
  454 U.S. 235 (1981) .............................................................................. 18

*Pollux Holding Ltd. v. Chase Manhattan Bank*,
  329 F.3d 64 (2d Cir. 2003) ............................................................... 11, 18

*Presbyterian Church of Sudan v. Talisman Energy, Inc.*,
  453 F. Supp. 2d 633 (S.D.N.Y. 2006), *aff'd*, 582 F.3d 244 (2d Cir. 2009) ..................... 19, 22

*Prodprogramma-Impuls Ltd. v. Bank of India*,
  2012 WL 2411809 (S.D.N.Y. June 25, 2012) .................................................. 25

*PT United Can Co. v. Crown Cork & Seal Co.*,
  138 F.3d 65 (2d Cir. 1998) ............................................................... 18, 19

*RIGroup LLC v. Trefonisco Mgmt. Ltd.*,
  949 F. Supp. 2d 546 (S.D.N.Y. 2013), *aff'd,* 559 F. App'x 58 (2d Cir. 2014) ............... 17, 27

*Royal & Sun Alliance Ins. Co. of Canada v. Century Int'l Arms, Inc.*,
  466 F.3d 88 (2d Cir. 2006) ................................................. 29, 31, 32, 33, 34

*Scottish Air Int'l, Inc. v. British Caledonian Group, PLC*,
  81 F.3d 1224 (2d Cir. 1996) ................................................................ 24

*Strategic Value Master Fund, Ltd. v. Cargill Fin. Servs., Corp.*,
  421 F. Supp. 2d 741 (S.D.N.Y. 2006) .................................................... 26, 27

*Thornton Tomasetti, Inc. v. Anguillan Dev. Corp.*,
  2015 WL 7078656 (S.D.N.Y. Nov. 13, 2015) ............................................. 31, 32, 33, 34

*United Bank for Africa PLC v. Coker*,
  2003 WL 22741575 (S.D.N.Y. Nov. 18, 2003) ............................................... 31, 32

*USHA (India), Ltd. v. Honeywell Int'l, Inc.*,
  421 F.3d 129 (2d Cir. 2005) ............................................................... 17

*Wamai v. Indus. Bank of Korea*,
    2021 WL 3038402 (S.D.N.Y. July 14, 2021) .................................................... 16

*Wave Studio, LLC v. Gen. Hotel Mgmt. Ltd.*,
    2017 WL 972117 (S.D.N.Y. Mar. 10, 2017), *aff'd*, 712 F. App'x 88 (2d Cir. 2018) ........... 16

*Wenzel v. Marriott Int'l, Inc.*,
    2014 WL 6603414 (S.D.N.Y. Nov. 17, 2014),
    *aff'd*, 629 F. App'x 122 (2d Cir. 2015) ........................................................ 15, 16

*White Plains Plaza Realty, LLC v. Cappelli*,
    135 N.Y.S.3d 417 (2d Dep't 2020) ................................................................ 2

*Wilson v. ImageSat Int'l N.V.*,
    2008 WL 2851511 (S.D.N.Y. July 22, 2008),
    *aff'd sub nom. Wilson v. Eckhaus*, 349 F. App'x 649 (2d Cir. 2009) ................. 14, 15, 23, 24

*Winn v. Schafer*,
    499 F. Supp. 2d 390 (S.D.N.Y. 2007) .............................................................. 22

**Rules**

Fed. R. Civ. P. 12(b)(3) .................................................................................. 1

Defendant Essar Global Fund Limited ("Essar Global) and Garnishee Mesabi Metallics Company LLC ("Mesabi") respectfully submit this memorandum of law in support of their motion to dismiss the Complaint of ArcelorMittal North America Holdings LLC ("AMNAH") under Federal Rule of Civil Procedure 12(b)(3) for *forum non conveniens* and to dismiss the Complaint or, in the alternative, stay this action on adjudicative comity grounds pending resolution of first-filed parallel foreign proceedings.[1]

### PRELIMINARY STATEMENT

This case fundamentally concerns foreign entities engaged in foreign transactions, which are governed by foreign law and already the subject of foreign litigation *initiated* by the same plaintiff here.  AMNAH only brought this action after it received an unfavorable preliminary ruling on substantively identical claims between substantively identical parties in England.  But this Court does not serve as a supranational tribunal of last resort available to all parties that wish to relitigate adverse foreign rulings, particularly when the relevant foreign courts have a much greater interest in resolving challenges to the propriety of transactions conducted by and the internal affairs of their domiciliaries.  Indeed, these circumstances demonstrate precisely why the doctrines of *forum non conveniens* and adjudicative comity exist:  so that the Court and the parties do not expend resources litigating complex questions of foreign law that are already pending before *two* foreign judiciaries.

The facts bely AMNAH's attempts to characterize this action as a simple proceeding to enforce an arbitral award.  The judgment debtor, Essar Steel Limited ("Essar Steel"), is not named as a defendant in this action.  Rather, AMNAH seeks to litigate the propriety of certain

---

[1]    This Court granted Defendants' request for bifurcated motion to dismiss briefing to first address *forum non conveniens* and comity. Dkt. 21.  Pursuant to that order, Defendants reserve the right to seek dismissal for lack of personal jurisdiction and failure to state a claim.

transactions through which AMNAH claims that Essar Steel somehow fraudulently transferred $1.48 billion to the defendant in this action, Essar Global, through the entirely appropriate correction in Essar Steel's 2016 financial statements of an accounting error that occurred in 2013.  AMNAH further seeks to impose alter ego liability on Essar Global, claiming these transactions demonstrate that Essar Global improperly dominated Essar Steel.  AMNAH's claims are wholly unsubstantiated: the transactions between Essar Steel and Essar Global were planned abroad, and approved by Essar Steel's board in Mauritius, years before Essar Steel even became a party to the contract with AMNAH that resulted in the arbitral award.  As an English court already explained, "it is … difficult to see how the September 2016 change in accounting treatment could realistically be viewed as an attempt to dissipate assets."  Declaration of Aidan O'Rourke ("O'Rourke Decl."), Ex. 2 (*Arcelormittal v. Ruia*, [2020] EWHC 740 (Comm)) ¶ 103.[2]

Regardless of the claims' dubious merits, this Court is not the proper forum for AMNAH's action.  Essar Global, the sole Defendant, is a Cayman entity, and Essar Steel is a Mauritian entity.  Essar Global has no operations in New York; the transactions between Essar Steel and Essar Global occurred abroad, were audited by foreign accountants, and are governed by foreign law.  When AMNAH's predecessor[3] first sought to litigate this claim in the United States in Minnesota state court, it was instructed to pursue the action abroad.  AMNAH did so,

---

[2]  New York law is to the same effect.  *See, e.g.*, *White Plains Plaza Realty, LLC v. Cappelli*, 135 N.Y.S.3d 417, 418 (2d Dep't 2020) (holding restatement of financial records directing "receivables owed … be written-off …. did not constitute 'conveyances' within the meaning of the Debtor and Creditor Law").  The absurdity of AMNAH's theory is made plain by a simple hypothetical involving a loan:  Party A loans Party B $100 in Year 1.  In Year 3, before the loan has been repaid, Party B's accountant does not include the loan as a liability in the financial statements.  Is the loan no longer an obligation simply by virtue of the financial statements?  No.  The proper characterization of the transaction is determined by its economic substance, not by how the loan is reflected in financial statements.

[3]  "AMNAH's predecessor" refers to ArcelorMittal USA, LLC ("AMUSA"), AMNAH's former subsidiary that assigned the arbitral award judgment to AMNAH on June 11, 2021.  Compl. ¶ 30.

prosecuting substantively identical claims for over two years in England, while stalling proceedings in Mauritius. Only many months after the English court denied AMNAH's application for a world-wide freezing order, finding that the underlying transactions were likely legitimate, did AMNAH file this action here.

Accordingly, all three stages of the *forum non conveniens* analysis compel dismissal. *First*, AMNAH's blatant forum shopping, particularly when the underlying claims have no connection to New York, is not entitled to any deference. *Second*, both England and Mauritius provide adequate alternative fora for the resolution of this dispute, as AMNAH has already expressly conceded and evidenced by AMNAH's actions in litigating in England. *Third*, the relevant public and private interests factors, such as the location of evidence and witnesses and the need to apply foreign law, overwhelmingly favor dismissal.

Similar considerations compel dismissal or, at a minimum, a stay of these proceedings on adjudicative comity grounds. AMNAH's claims can be fully resolved in England and Mauritius, where the propriety of the same transactions challenged here is already before both foreign courts. So, too, are all the relevant parties, including AMNAH, Essar Global, and, in the England proceedings, the individual defendants that AMNAH claims controlled the transactions. Moreover, the English courts have had a nearly two-year head start in resolving the claims, as a result of AMNAH's decision in 2019 to litigate in that forum. Simultaneous litigation in a third forum with no real connection to the underlying facts would significantly prejudice and inconvenience Essar Global and Mesabi, and waste this Court's judicial resources.

## FACTUAL BACKGROUND

This action seeks to enforce an arbitral award against an entity that was not party to the arbitration or underlying contract, Essar Global. AMNAH alleges that Essar Global received fraudulent transfers from the judgment debtor, Essar Steel, which AMNAH also alleges to be an

3

alter ego of Essar Global.  *See* Compl. ¶ 1.  Thus, under AMNAH's own framing of the case, the core purpose of this action is "to unwind fraudulent transfers" that have purportedly thwarted AMNAH's ability to enforce an arbitral award against Essar Steel.  *Id*.  AMNAH specifically identifies the removal from Essar Steel's financial statements of a receivable of $1.48 billion that Essar Global owed to Essar Steel as a fraudulent transfer and evidence of domination.  *Id*. ¶ 2.

**A.     Essar Steel Planned And Executed The Challenged Foreign Transactions With Essar Global Years Before Essar Steel Contracted With AMUSA**

The history of the underlying transactions that the receivable and attendant accounting represented refutes AMNAH's allegations and illustrates the absence of *any* connection between the conduct at issue and AMNAH's chosen forum.  The challenged transactions involve Essar Steel's purported divestiture of its shareholdings in Essar Steel India Limited.  *Id*. ¶ 71-78.  These transactions had their origins in a longstanding restructuring plan, outlined in 2011 and enacted in 2012, intended to capitalize a separate Essar company through the transfer of Essar Steel's interest in Essar Steel India Limited so that the newly-capitalized Essar entity could raise funds on the capital markets.  O'Rourke Decl., Ex. 2 ¶ 46; Declaration of Ritish Doorbiz ("Doorbiz Decl.") ¶ 8.  The English court already found "likely" that, at the time the restructuring plan was enacted, "Essar Steel could lawfully have undertaken the transactions envisaged, including the proposed dividend/reduction of capital."  O'Rourke Decl., Ex. 2 ¶ 47.

This assessment was made for good reason:  the disputed transactions occurred years before Essar Steel entered into *any* contractual relationship with AMNAH or its predecessor, and are reflected in contemporary minutes for board of director meetings of Essar Steel and Essar Global.  *Id*. ¶¶ 48, 53 ("[T]he evidence strongly suggests that a restructuring, elements of which would include the sale of Essar Steel India by Essar Steel in return for a promissory note and the distribution of that note to [Essar Global] by way of dividend or reduction of capital, had been

contemplated and planned for many months or years before[] AMUSA sought a guarantee from any company – let alone Essar Steel – for the proposed [Pellet Sale Agreement].").  The board meetings for Essar Steel occurred in Mauritius, its place of incorporation and operation.  Doorbiz Decl. ¶ 6.  The board meetings for Essar Global were conducted primarily out of Mauritius, its normal place of operation.  *Id.* ¶ 4.  None were conducted in the United States.  *Id.* ¶¶ 4-5.

Unable to seriously dispute the legitimacy of these transactions, AMNAH attempts to sidestep the issue by focusing on a change in accounting treatment in Essar Steel's audited financial statements in 2016.  Specifically, AMNAH asserts that Essar Steel's audited financial statements from 2014 and 2015 listed as a "receivable" the $1.5 billion face value of the notes that Essar Steel had assigned to Essar Global, and that Essar Steel improperly recharacterized that item as a share buyback in the 2016 audited financial statements.  Compl. ¶¶ 2, 102.

As will be established in either or both of the already-pending actions in England and Mauritius, the inclusion of this item as a "receivable" on Essar Steel's 2014 and 2015 audited financial statements was a mistake that bore no relation to the underlying economic reality of the transactions, which were legally permissible, and did not indebt Essar Global to Essar Steel.  O'Rourke Decl., Ex. 2 ¶¶ 47, 96.  Accordingly, the item was properly changed to a share buyback in Essar Steel's 2016 audited financial statements.  *Id.* ¶ 98.  Those statements were audited by Nexia Baker & Arenson, located out of Mauritius, and approved by Essar Steel's board of directors at a meeting that was also held in Mauritius.  Doorbiz Decl. ¶ 11.  As the English Court explained, "it is … difficult to see how the September 2016 change in accounting treatment could realistically be viewed as an attempt to dissipate assets."  O'Rourke Decl., Ex. 2 ¶ 103.

**B.      The Pellet Sale Agreements And Arbitration**

Over a year after Essar Steel had first planned these restructuring transactions, and nine months after the Essar Steel Board formally approved the restructuring transactions, *see* Doorbiz Decl. ¶ 8, Essar Steel Minnesota LLC ("Essar Steel Minnesota") entered into the Pellet Sale Agreement, pursuant to which AMUSA was to purchase iron ore pellets from a facility in Minnesota, on December 17, 2012.  Compl. ¶ 39.  ***Essar Steel was not a party to the original contract***.  *Id*.  On January 10, 2014, nearly three years after the restructuring transactions were planned, nearly two years after the Essar Steel Board formally approved of the restructuring transactions, and over a year after Essar Steel divested itself of the Essar Steel India shareholdings at issue, the Pellet Sale Agreement was amended to extend the time for performance and, for the first time, to name Essar Steel as a party to the Agreement at AMUSA's request.  *Id*. ¶ 14(a); O'Rourke Decl., Ex. 2 ¶ 18.  Notably, AMUSA did not seek any guarantee from Essar Global, or otherwise attempt to make Essar Global party to that contract.  *Id*.

On May 26, 2016, after the schedule for performance had been further extended by mutual agreement, AMUSA served notice to terminate the Pellet Sale Agreement.  *Id*. ¶ 19.  As a result of that termination, Essar Steel Minnesota's financial stability was put in jeopardy, along with its important mineral leases.  *Id*. ¶ 21.  As a result, Essar Steel Minnesota then filed a voluntary petition for relief under Chapter 11 on July 8, 2016.  *Id*.

On August 9, 2016, AMUSA initiated ICC arbitration proceedings against Essar Steel.  Compl. ¶ 53.  AMUSA prevailed before the ICC, and on December 19, 2017, the arbitration tribunal awarded AMUSA $1,379,457,503 in damages, plus costs and interest against Essar Steel.  *Id*. ¶ 57.  The award was entered as a judgment by the District of Minnesota on April 2, 2018. *Id*. ¶ 58.

**C.      After Unsuccessfully Prosecuting Its Claims In Three Other Jurisdictions, AMNAH Files Suit Here**

This action is the fourth and latest-filed attempt by AMNAH and its predecessors to impose liability for the arbitral award on Essar Global.  The prior actions, the latter two of which remain pending, are as follows.

*Minnesota Proceedings*.  On March 2, 2018, AMUSA sued Essar Steel, ***Essar Global***, Essar Steel Asia Holdings Ltd., Essar Steel Middle East Fze, and Prashant Ruia (also an individual defendant in the English proceedings) in Minnesota state court.  *See* Declaration of Todd Beattie ("Beattie Decl."), Ex. 1 (Minnesota Complaint).  As in this action, AMNAH's predecessor alleged the defendants "stripped Essar Steel of its assets in an attempt to avoid" the "arbitration award against Essar Steel."  *Id.* ¶ 1.  The Minnesota court dismissed the claims against Essar Steel and Essar Global for *forum non conveniens* and lack of personal jurisdiction on June 27, 2018, holding that AMUSA's alter ego and corporate veil-piercing claims should proceed in the courts of Mauritius.  Beattie Decl., Ex. 2 (Minnesota State Court Order) at 56.

*Mauritius Proceedings*.  Essar Steel was placed in administration in Mauritius, its place of incorporation, on March 26, 2019.  Compl. ¶ 151.  Essar Steel's board appointed as administrator Mr. Satter Hajee Abdoula, the Chief Executive Officer of Grant Thornton Mauritius and an insolvency practitioner with over 30 years' experience.  Declaration of Muhammad Reza Cassam Uteem ("Uteem Decl.") ¶ 3.  On May 6, 2019, Essar Global initiated an action against Essar Steel for declaratory relief in the Supreme Court of Mauritius (Commercial Division), seeking an order declaring that that Essar Global was not indebted to Essar Steel (the "Mauritius Adversarial Proceeding").  Beattie Decl., Ex. 3 (Essar Global Plaint With Summons).  Essar Global named AMUSA as a co-defendant to ensure the purported creditors would be heard.  *Id.*; Uteem Decl. ¶ 6.  Essar Global also expressly disclosed to the

Mauritian court that AMUSA (1) obtained an arbitral award against Essar Steel, (2) sought and obtained a worldwide freezing order against Essar Steel in England, and (3) obtained search and disclosure orders against Essar Global in the Cayman Islands. *Id.* ¶ 4; Beattie Decl., Ex. 3 ¶ 4.

On April 19, 2019, AMUSA obtained an *ex parte* order appointing an additional administrator of Essar Steel, in addition to the administrator already appointed by the Essar Steel. O'Rourke Decl., Ex. 2 ¶ 27(vi). Proceedings have been stalled since that date because AMUSA continues to prevent the administrator appointed by Essar Steel from conducting the administration, including in the Mauritius Adversarial Proceeding.[4] Uteem Decl. ¶¶ 9-10.

*English Proceedings*. On November 18, 2019, AMNAH's predecessor brought suit for damages in England against Essar Global, Essar Capital Limited, Essar Capital Services (UK) Limited, Mr. Ravi Ruia, Mr. Prashant Ruia, Mr. Sushil Baid, Mr. Andrew Wright, Mr. Joseph Seifert, Mr. Uday Kumar Gujadhur, and Mr. Nigel Bell (the "English Action"). The claims against Mr. Seifert and Mr. Bell have since been released. O'Rourke Decl. ¶ 3. AMNAH was subsequently substituted as Plaintiff on March 24, 2021, to reflect the assignment of the claims from AMUSA to AMNAH. O'Rourke Decl., Ex. 1 (Re-Amended Particulars of Claim) ¶ 7A.[5]

AMNAH alleges in the English Action that Essar Global, two other Essar entities, and the remaining individuals "conspired to injure [AMNAH] … by putting [Essar Steel] in a position in which it lacked the financial resources to pay any substantial liability under the . . . [arbitral] award." *Id.* ¶ 5. Indeed, as amended, there is complete overlap between the issues that will be resolved in the English Action and here:

---

[4] Specifically, AMUSA has filed an action before the Supreme Court of Mauritius (Bankruptcy Division) to remove Mr. Abdoula as administrator and prohibit Mr. Abdoula from convening the watershed meeting of Essar Steel's creditors necessary for the administration to proceed. Uteem Decl. ¶¶ 4, 9. The Mauritian court issued an interim injunctive order prohibiting Mr. Abdoula from convening the watershed meeting. *Id.* ¶ 9.

[5] Accordingly, we refer to AMNAH rather than AMUSA when describing the English Action.

| Similarities Between The English And New York Actions | | |
|---|---|---|
| | **English Re-Amended Particulars of Claim** (O'Rourke Decl., Ex. 1) | **New York Complaint (Dkt. 1)** |
| **Summary of Common Allegations** | ¶ 5 ("Defendants . . . agreed or combined together with a common intention to injure or cause loss to [AMNAH] by putting [Essar Steel] in a position in which it lacked the financial resources to pay any substantial liability under the Amended Pellet Sale Agreement and/or ICC Award.") | ¶ 2 (Essar Global and Essar Steel's "attempt to eliminate the Essar Global receivable was made in order to make Essar Steel judgment proof so that [AMUSA] could not recover any amounts awarded to it in the recently commenced arbitration.") |
| **Common Fraudulent Transfer Allegations** | *Essar Global allegedly caused Essar Steel to eliminate the $1.48 Billion Receivable* | |
| | ¶ 43.1-3 ("Following the [Essar Global] Assignments, [Essar Global] was under an obligation to pay [Essar Steel] $1.5 billion; …. The explanation given in the 2016 Accounts that the recording of the $1.5 billion as an asset of [Essar Steel] was merely a mistake … cannot be correct.") | ¶¶ 94-95 ("[T]he $1.48 Billion Receivable … was eliminated by an accounting fraud undertaken by Essar Global.  With the elimination of the $1.48 Billion Receivable, Essar Steel was rendered insolvent …"). |
| | *Essar Global allegedly did so with fraudulent intent* | |
| | ¶ 49 ("[I]n combining to disable [Essar Steel] from satisfying its liabilities, the Defendants intended to cause harm to [AMNAH].") | ¶ 126 ("The badges of fraud … prove fraudulent intent of Essar Global and its wholly owned subsidiary in conveying away Essar Steel's largest asset immediately after the arbitration was commenced against it.") |
| **Common Alter Ego Theory** | *Essar Global allegedly dominated and controlled Essar Steel* | |
| | ¶ 56.3 ("[Essar Global] was the direct owner and controller of [Essar Steel], and liable to [Essar Steel] in the sum of approximately $1.5 billion …. it is to be inferred that [Essar Global] must have caused [Essar Steel] to take no steps to call in the $1.5 billion" and "approved and directed that [Essar Steel] carry it out[.]") | ¶ 134 ("Due to Essar Global's domination and control over Essar Steel as its alter ego, Essar Steel is severely undercapitalized …. Essar Global directed Essar Steel to sell its shares of Essar India in 2012 and 2013.") |
| **Common Relief Sought** | *Damages in the amount of the Arbitral Award from Essar Global* | |
| | ¶ 57, 58 ("[AMNAH] as suffered loss and damage as a result of the Conspiracy, being the loss of a chance of recovering the ICC Award in full … the Defendants are jointly and severally liable … in such damages.") | Prayer for Relief ¶ 2 ("[AMNAH] respectfully requests that this Court … [e]nter judgment against Essar Global, as alter ego of Essar Steel, in the amount of Plaintiff's [ICC] Judgment…"). |

On November 21, 2019, AMNAH applied for a worldwide freezing injunction against

Essar Global, Ravi Ruia, and Prashant Ruia.  O'Rourke Decl., Ex. 2 ¶¶ 1-4.  The English court

denied the requested relief in an 81-page judgment after a two-day hearing on March 3-4, 2020, *id.* ¶ 5, at which the English court considered 12 witness statements, 5 affidavits, and thousands of pages of documentary evidence.  O'Rourke Decl. ¶ 9.  The English court held that AMNAH "ha[d] not shown a good arguable case on the merits of its substantive claim," and "ha[d], moreover, not shown a good arguable case that it has a claim in or approximating to the amount claimed, or any other specific amount."  O'Rourke Decl., Ex. 2 ¶ 267(i)–(ii).  Thus, AMNAH failed to clear even the minimal bar of establishing a "good arguable case," which requires only a case "more than barely capable of serious argument, and yet not necessarily one which the Judge believes to have a better than fifty percent chance of success."  *Id.* ¶ 211.

The English court further explained that:  (a) AMNAH's "case that the restructuring in 2012 and 2013 involving the removal of Essar Steel India from Essar Steel was done pursuant to an unlawful means conspiracy *strains credibility*"; (b) "[t]he allegation that the assignment of … the two promissory notes to EGFL in March 2013 was designed to evade liabilities to [AMNAH] *lacks any real cogency*"; and (c) AMNAH's "case relying on the change of accounting treatment in 2016 is inconsistent with its overall case of conspiracy, and in any event [the English court] [did] *not* consider [AMNAH] to have put forward *any realistic case* that the change amounted to a dissipation or attempted dissipation of an asset, let alone of a clear debt claim."  *Id.* ¶¶ 214(i)-(iv) (emphases added).  AMNAH was then denied permission to appeal by the Honorable Lord Justice Newey, who held "[t]he appeal has no real prospect of success" and explained that the trial court "was entitled to consider that the evidence did not establish a cogent case that the restatement amounted to a dissipation or attempted dissipation."  O'Rourke Decl., Ex. 3 (Order Refusing Permission To Appeal).

Following this decision, on August 18, 2021—nearly two years after AMNAH commenced the English Action—AMNAH filed its duplicative action here. Accordingly, this case is already significantly behind the English Action, which is scheduled for a hearing on applications to strike (dismiss) the claims as against Mr. Wright, Mr. Gujadhur, and Essar Capital Services (UK) Limited on April 13, 2022; agreement on the List of Issues for Disclosure (the scope of discovery) by March 1, 2022; a case management conference on June 8, 2022; Extended Disclosures (discovery productions) by August 19, 2022, September 16, 2022, and October 14, 2022; and trial to begin on November 13, 2023. O'Rourke Decl. ¶¶ 12-13. These deadlines would have been set earlier (or already have passed) had AMNAH not delayed the English Action by repleading its entire case, retaining new counsel, and requesting numerous extensions to the existing deadlines. *Id*. ¶ 12.

## **ARGUMENT**

### I.     THE ACTION SHOULD BE DISMISSED FOR *FORUM NON CONVENIENS*

This Court assesses dismissal for *forum non conveniens* in a three-step inquiry: *first,* the court must first determine the level of deference to give the plaintiff's choice of forum; *second,* it must determine whether an adequate alternative forum exists; and *third*, if it identifies an adequate alternative forum, it must weigh the public and private interests to determine which forum will be most convenient and best serve the ends of justice. *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 70 (2d Cir. 2003). All three steps compel dismissal here.

#### A.     Plaintiff's Choice Of Forum Is Motivated By Forum Shopping And Should Receive Minimal Deference

The Second Circuit has instructed district courts to determine the requisite deference by applying "a sliding scale" that measures the degree to which the plaintiff's choice was "dictated by reasons that the law recognizes as valid." *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 71-72

(2d Cir. 2001).  A plaintiff's choice of forum is entitled to greater deference if it was motivated by considerations of "convenience," and less deference if there is a "plausible likelihood" that it was "motivated by forum-shopping reasons."  *Id.*  The following indicia of forum-shopping dictate that AMNAH's choice of forum should receive minimal deference because it is a result of forum shopping, rather than genuine connection to the Southern District or the United States.

*First*, the pendency of two other disputes concerning the same subject matter, one of which AMNAH initiated years before this action, demonstrates that AMNAH filed this action in hopes of obtaining a more receptive audience than it has received from the courts of England and Mauritius.  *See Kingstown Cap. Mgmt., L.P. v. Vitek*, 2020 WL 5350492, at *8 (S.D.N.Y. Sept. 4, 2020) (holding "this case bears indicia of forum shopping" because plaintiffs filed suit in the Southern District "years after [they] filed a substantially similar action in Luxembourg").  This Court has repeatedly held that a plaintiff's decision to "file suit in this District," only after it "has not found success in th[e foreign] proceedings" it initiated, "smacks of forum shopping." *Aenergy, S.A. v. Republic of Angola*, 2021 WL 1998725, at *10 (S.D.N.Y. May 19, 2021) (emphasizing as "even more telling" "the fact that before coming to this Court, [plaintiff] first chose a different forum").  *See also Banco de Serguros del Estado v. J.P. Morgan Chase & Co.*, 500 F. Supp. 2d 251, 261 (S.D.N.Y. 2007) ("[L]ittle, if any, deference" warranted where "matters pertaining to the same alleged events … have been proceeding [abroad]").[6]  In short, "having pursued various remedies in [a foreign] court system with unsatisfactory results, the plaintiffs now seek to take their case to the United States." *Base Metal Trading SA v. Russian*

---

[6]   That AMNAH has sought to avail itself of a jury trial, *see* Compl. at 1, which would not be available in England, *see, e.g.*, *In re Ephedra Prod. Liab. Litig.*, 349 B.R. 333, 337 (S.D.N.Y. 2006); O'Rourke Decl. ¶ 8, further evinces the tactical nature of this suit.  *See, e.g.*, *Iragorri*, 274 F.3d at 72 (characterizing as "forum-shopping reasons" the "attempts to win a tactical advantage resulting from … the habitual generosity of juries in the United States or in the forum district").

*Aluminum*, 253 F. Supp. 2d 681, 698 (S.D.N.Y. 2003). "Such a tactical maneuver is not protected by the deference generally owed to the plaintiffs' choice of forum." *Id.*

Nor does the fact that AMNAH's predecessor filed a similar action in Minnesota state court undermine the conclusion that the venue of this Action was driven by forum shopping. Omitted from AMNAH's explanation at the pre-motion conference that it was "bounced out of Minnesota because Essar Global took the position that they were not subject to personal jurisdiction," Beattie Decl., Ex. 4 (Pre-Motion Conference Transcript) at 38:24-39:1, was the dismissal of the other counts for *forum non conveniens* on grounds equally applicable here. *See* Beattie Decl., Ex. 2 at 43 n.36 ("Even if the Court had personal jurisdiction over the fraudulent transfer claims, it would decline to exercise that jurisdiction based on the doctrine of *forum non conveniens*."). The Minnesota court explained: "The crux of Plaintiff's claims involves alleged fraudulent transfers, and disregard of corporate formalities, which implicate the corporate decision-making of foreign personnel of foreign entities, in a series of foreign transactions." Beattie Decl., Ex. 2 at 46. Having been instructed by the Minnesota court to pursue its claims abroad, Beattie Decl., Ex. 2 at 5-6, AMNAH did so in England until it received an unfavorable ruling raising serious questions about its ability to prevail in that forum, *supra* 8-10. This is the textbook case for forum shopping.

*Second*, the absence of any meaningful connection between the forum and the actions giving rise to AMNAH's cause of action reinforces the conclusion that AMNAH's choice of a U.S. forum was motivated by forum-shopping reasons and deserves minimal deference. *See In re Arb. between Monegasque De Reassurances S.A.M. v. Nak Naftogaz of Ukraine*, 311 F.3d 488, 499 (2d Cir. 2002) ("little deference need be given to the petitioner's choice of forum" absent a real "link" between the parties or claims and the United States); *Acosta v. JPMorgan*

*Chase & Co.*, 219 F. App'x 83, 86 (2d Cir. 2007) (plaintiffs "fail to allege a *bona fide* connection that justifies granting substantial deference to their choice of forum" where "the vast majority of the activities alleged in the complaint were committed by foreign nationals on foreign soil").

The *gravamen* of this action is the allegedly "fraudulent transfers that have thwarted ArcelorMittal's ability to enforce the Judgment." Compl. ¶¶ 1-2. But every stage of these transactions occurred outside the forum: the transactions involved companies incorporated in and operating out of the Cayman Islands (Essar Global) and Mauritius (Essar Steel); the restructuring pursuant to which the challenged transactions occurred was planned abroad by foreign directors with the help of foreign accountants, lawyers, and other professional advisors; the transactions were approved by foreign directors at board meetings held abroad; and the financial statements that AMNAH alleges were improperly restated were audited by foreign accountants operating out of foreign offices. Doorbiz Decl. ¶¶ 3-4, 6, 8-12. AMNAH's alter ego claim similarly lacks any connection to this forum because both companies are organized and operate abroad, *id.* ¶¶ 4-6, and the transactions that allegedly evince Essar Global's control over Essar Steel are the same foreign transactions at issue in AMNAH's fraudulent conveyance claims. Compl. ¶ 3 ("Essar Global's purposeful actions have enabled Essar Steel, for these last three years, to drain itself of assets (for the benefit of Essar Global).").

Nor does the existence of unrelated contracts containing New York forum selection or choice of law clauses establish any connection to this forum as to the claims at issue. AMNAH does not allege that Essar Global has breached any of the contracts that purportedly contain New York forum selection clauses, rendering these ancillary contracts irrelevant to the deference plaintiff is entitled to receive. *Wilson v. ImageSat Int'l N.V.*, 2008 WL 2851511, at *4 (S.D.N.Y. July 22, 2008), *as amended* (July 30, 2008), *aff'd sub nom. Wilson v. Eckhaus*, 349 F. App'x 649

14

(2d Cir. 2009) (concluding plaintiff's choice of forum entitled to "minimal[] deference" where "plaintiffs have not attempted to show that" contracts containing forum selection clauses "either singly or together form the basis of any of their claims in this lawsuit"); *Lfoundry Rousset SAS v. Atmel Corp.*, 2015 WL 4461617, at *5 (S.D.N.Y. July 21, 2015), *aff'd sub nom. Guerrini v. Atmel Corp.*, 667 F. App'x 308 (2d Cir. 2016) (Because "no contract claims have been brought here," choice of law and forum clauses "have a limited impact on the overall [*forum non conveniens*] calculus."); *Acosta*, 219 F. App'x at 86 n.2 (affirming denial of significant deference where claims did not "aris[e] under" agreement containing forum selection clause).

That the Pledge and Security Agreement signed by Mesabi in connection with the Notes consented to jurisdiction in New York, *see* Compl. ¶ 19, is also irrelevant. AMNAH was not a party to that contract, and a non-signatory may enforce a forum selection clause against a signatory only "when the non-signatory is 'closely-related' to another signatory." *Magi XXI, Inc. v. Stato della Citta del Vaticano*, 714 F.3d 714, 723 (2d Cir. 2013). AMNAH has not alleged such a "close-relat[ion]" to any of the parties to the contracts in question. *Id. See also Fasano v. Guoqing Li*, 482 F. Supp. 3d 158, 171 (S.D.N.Y. 2020) (the "closely-related" test assesses "whether, based on Plaintiffs' allegations, it would be foreseeable to any of the non-signatories that they would be bound by the Forum Selection Clause by virtue of their relationship with [the party to the agreement] or their role in the transaction undergirding the [relevant] Agreement"). AMNAH cannot contend that it was foreseeable to Mesabi and its counterparties to the Fixed Rate Junior Secured Notes that a judgment debtor of an unrelated Essar entity would invoke the provisions in those Note Agreements as grounds for pursuing Essar Global in this forum.

Accordingly, where, as in this case, all of the operative facts occurred abroad, a plaintiff's choice of forum is not entitled to meaningful deference. *Wenzel v. Marriott Int'l, Inc.*, 2014 WL

6603414, at *3 (S.D.N.Y. Nov. 17, 2014), *aff'd*, 629 F. App'x 122 (2d Cir. 2015) (explaining "many courts have held that where none of the operative facts of the action occurred in the plaintiff's chosen form, the choice is afforded less weight."); *Kirch v. Liberty Media Corp.*, 2006 WL 3247363, at *4 (S.D.N.Y. Nov. 8, 2006) ("[W]e we conclude that the plaintiffs' choice of this forum is not to be afforded great deference, in light of the inherently [foreign] nature of this dispute."); *Niv v. Hilton Hotels Corp.*, 710 F. Supp. 2d 328, 332 (S.D.N.Y. 2008), *aff'd,* 358 F. App'x 282 (2d Cir. 2009) (similar).

*Third*, unlike the proceedings in England and Mauritius where the relevant entities are already party to suit, there are serious questions as to whether this Court may exercise personal jurisdiction over Essar Global. *See* Pre-Motion Letter, Dkt. 14 at 3. "This jurisdictional dispute in and of itself weighs against deferring to the plaintiffs' choice of forum." *Wamai v. Indus. Bank of Korea*, 2021 WL 3038402, at *5 (S.D.N.Y. July 14, 2021). *See also Kingstown*, 2020 WL 5350492, at *9 (minimal deference where "defendants may not be amenable to suit here" and "[a]ll of the defendants contest this Court's jurisdiction over them").

At most, AMNAH can point to the allegation (Compl. ¶ 29) that it is incorporated in Delaware with a principal place of business in Chicago to claim its choice of forum is entitled to deference. But, as the Minnesota state court emphasized, "Plaintiff ... is a wholly-owned subsidiary of its Luxembourg-based parent." Beattie Decl., Ex. 2 at 50; *see also* Corporate Disclosure Statement, Dkt. 3 (disclosing that plaintiff "is an indirect, wholly-owned subsidiary of ArcelorMittal S.A"). And "where the real party in interest is a foreigner and the plaintiff is a United States citizen solely by virtue of its place of incorporation, the plaintiff's choice of forum will carry considerably less weight." *Wave Studio, LLC v. Gen. Hotel Mgmt. Ltd.*, 2017 WL 972117, at *6 (S.D.N.Y. Mar. 10, 2017), *aff'd*, 712 F. App'x 88 (2d Cir. 2018) (citation omitted).

Nor does the fact that AMNAH itself is a United States entity refute the above indicia of forum shopping:  the presumption in favor of a plaintiff's home forum applies only "[a]bsent a finding of forum-shopping."  *Dattner v. Conagra Foods, Inc.*, 91 F. App'x 179, 180 (2d Cir. 2004).  Accordingly, this court routinely refuses deference to plaintiffs frustrated by foreign proceedings that those plaintiffs initiated, even when those plaintiffs are based in the United States.  *See, e.g.*, *Kingstown*, 2020 WL 5350492, at *8 (denying deference to plaintiffs that "operate from offices in Manhattan" because "this case bears indicia of forum shopping"); *BFI Grp. Divino Corp. v. JSC Russian Aluminum*, 298 F. App'x 87, 91 (2d Cir. 2008) (weighing a company's "U.S. citizenship against" other factors to deny "significant deference").

Finally, even if AMNAH's choice of forum were to be afforded any meaningful deference (and it should not), dismissal for *forum non conveniens* would still be appropriate in light of the decisive weight of the private and public interest factors, *infra* 21-28.  *See USHA (India), Ltd. v. Honeywell Int'l, Inc.*, 421 F.3d 129, 134 (2d Cir. 2005) ("We have no need to inquire as to the proper level of deference that is due the plaintiffs … because we conclude that irrespective of the level of such deference, the balance of private and public interests weighs decisively in favor of adjudicating the case in the courts of India.").  Indeed, the "deference given to a resident's choice of home forum is not a guarantee against *forum non conveniens* dismissal."  *Carey v. Bayerische Hypo-Und Vereinsbank AG*, 370 F.3d 234, 238-39 (2d Cir. 2004).  *See also RIGroup LLC v. Trefonisco Mgmt. Ltd.*, 949 F. Supp. 2d 546, 551-52 (S.D.N.Y. 2013), *aff'd*, 559 F. App'x 58 (2d Cir. 2014) ("[T]he Court of Appeals has long made clear that there is no rigid rule of decision protecting U.S. … plaintiffs from dismissal for *forum non conveniens*.").

### B.        England And Mauritius Are Adequate Alternate Fora

To assess the adequacy of an alternative forum, this Court considers whether:  (1) the defendants are subject to service of process there; and (2) the forum permits "litigation of the subject matter of the dispute."  *Pollux*, 329 F.3d at 75.  A forum will be considered inadequate only in "rare circumstances … where the remedy offered by the other forum is clearly unsatisfactory."  *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n.22 (1981).  Both England and Mauritius readily satisfy these requirements.

*First*, as to England, Essar Global is a named defendant and has been served in those proceedings.  O'Rourke Decl., Ex. 1; Compl. ¶ 144.  And "there can be no doubt that England permits litigation to resolve commercial disputes of the type presented in this case."  *Pollux*, 329 F.3d at 75; *see also Gilstrap v. Radianz Ltd*., 443 F. Supp. 2d 474, 481-82 (S.D.N.Y. 2006), *aff'd,* 233 F. App'x 83 (2d Cir. 2007) (similar).  Just as in this action, the English Action concerns the propriety of the restatement and underlying accounting treatment.   *Infra* 9; O'Rourke Decl., Ex. 2 ¶14 ("The alleged stripping of the assets … involves … a restatement of Essar Steel's accounts in 2016 …."), ¶ 98 ("[I]t is well arguable that the previous accounting treatment in 2014 and 2015 was incorrect and would have radically overstated a highly contestable asset."); ¶ 103 ("[I]t is … difficult to see how the September 2016 change in accounting treatment could realistically be viewed as an attempt to dissipate assets.").

That the specific claims in England (conspiracy) may be different from the claims here (alter ego and fraudulent conveyance) is irrelevant so long as the "subject matter of the dispute" can be litigated.   *Aenergy*, 2021 WL 1998725, at *13 ("[T]he availability of an adequate alternative forum does not depend on … an identical cause of action."); *Figueiredo Ferraz E Engenharia de Projeto Ltda. v. Republic of Peru*, 665 F.3d 384, 390 (2d Cir. 2011) ("[A]dequacy of alternate foreign forum does not depend on identical remedies.") (quotations omitted); *PT*

*United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 74 (2d Cir. 1998) (alternative forum adequate if court can "address the underlying controversy").

*Second*, as to Mauritius, AMNAH's predecessor has already expressly conceded that it constitutes an adequate alternative forum for the resolution of alter ego and fraudulent-transfer claims. As the court explained in the Minnesota action: "Plaintiff concedes that Mauritius, under the laws of which Essar Steel and Essar Asia are organized, provides an adequate and available alternative forum. Plaintiff states '[Plaintiff] ArcelorMittal USA is not contesting the Essar Defendants' threshold argument that an alternative forum such as Mauritius exists in this case, and that the laws of Mauritius may afford ArcelorMittal USA some remedy for its fraudulent-transfer and veil piercing claims.'" Beattie Decl., Ex. 2 at 44-45.

This concession was made for good reason: the Mauritian Adversarial Proceeding, to which AMUSA is a party,[7] directly seeks to resolve the legitimacy of the transactions and restatement at issue in this action. *See* Beattie Decl., Ex. 3 ¶ 8 ("The present proceedings seek the determination of ... whether EGFL is presently indebted to ESL in the sum of approximately US$1.5b."); Uteem Decl. ¶ 8. And Mauritian law contemplates the type of alter ego claims alleged here: "Mauritian law does allow for the corporate veil to be pierced ... when it can be proved that a company conducts business with the intent to defraud creditors or as a mere facade." *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 453 F. Supp. 2d 633, 683 (S.D.N.Y. 2006), *aff'd*, 582 F.3d 244 (2d Cir. 2009).

AMNAH alleges that the Mauritian Adversarial Proceeding is "collusive litigation," Compl. ¶ 151, presumably because the adversarial action that seeks a determination on the existence of the debt was brought by Essar Global against Essar Steel. *See* Beattie Decl., Ex 3.

---

[7]   Although AMNAH substituted itself for its predecessor in the English proceeding, O'Rourke Decl., Ex. 1, it has not yet done so Mauritius.

But Essar Global named AMNAH's predecessor (alongside another purported creditor of Essar Steel) as a co-defendant, and expressly disclosed to the Mauritian court that AMNAH's predecessor had (1) obtained an arbitral award against Essar Steel, (2) sought a worldwide freezing order against Essar Steel in England, and (3) obtained search and disclosure orders against Essar Global in the Cayman Islands.   *Id.* ¶ 4; Uteem Decl. ¶ 7.   Essar Global's documented efforts to name AMNAH's predecessor as party to the relevant litigation and ensure the Mauritian court was fully informed of the related proceedings bely AMNAH's conclusory assertion that the Mauritius Adversarial Proceedings is "collusive."   *See* Beattie Decl., Ex. 3; Uteem Decl. ¶ 7.   That AMNAH has stalled the Mauritian litigation by litigating the appointment of Essar Steel's administrator, Uteem Decl. ¶¶ 9-10, does not render Mauritius an inadequate forum.   *See Monegasque De Reassurances*, 311 F.3d at 499 ("This simply is not a case where the alternative forum is characterized by a complete absence of due process or an inability of the forum to provide substantial justice to the parties.")

Nor can the alleged location, Compl. ¶ 32,  of the Mesabi Notes—New York—compel this case to proceed here.   The Second Circuit rejected this very argument in *Figueiredo Ferraz*, explaining:

> It is no doubt true that only a United States court may attach a defendant's particular assets located here, but that circumstance cannot render a foreign forum inadequate.  If it could, every suit having the ultimate objective of executing upon assets located in this country could never be dismissed because of FNC.

665 F.3d at 390 (citing *Monegasque De Reassurances*, 311 F.3d at 500, as a "recent example").

Even if AMNAH "might recover less in an alternate forum," and there is no reason to believe that Essar Global would be judgment proof, such an outcome would "not render that forum inadequate."  *Id.* at 391 (citing *Alcoa Steamship Co. v. M/V Nordic Regent*, 654 F.2d 147, 159 (2d Cir. 1980) for the proposition that an alternate forum was "not inadequate although

plaintiff might recover only $570,000 there, rather than $8 million in the United States"). In any event, the Mesabi Notes are not even owned by Essar Global. *See Essar Glob. Fund Ltd. v. Roberts-Davis*, 2020 WL 3172844, at *1 (Minn. Ct. App. June 15, 2020) ("In December 2018, [EESL] … purchased $260 million in secured notes issued by Mesabi[.]").

### C.    The Public Interest Factors Compel Dismissal

The public interest "factors include … the imposition of jury duty upon those whose community bears no relationship to the litigation; the local interest in resolving local disputes; and the problems implicated in the application of foreign law." *Monegasque De Reassurances*, 311 F.3d at 500. Here, AMNAH seeks a jury trial to adjudicate the propriety of foreign transactions between foreign entities, conducted and audited abroad, governed by foreign law, and already subject to foreign proceedings. The public interest factors all favor dismissal.

*First*, the controversy at the heart of this action is already subject to litigation in England and Mauritius, *supra* 7-10. And "[n]umerous courts have found that the public interest factors often favor dismissal where there is … parallel litigation arising out of the same or similar facts already pending in the foreign jurisdiction." *In re Herald, Primeo, & Thema Sec. Litig.*, 2011 WL 5928952, at *17 (S.D.N.Y. Nov. 29, 2011), *aff'd*, 730 F.3d 112 (2d Cir. 2013); *Otor, S.A. v. Credit Lyonnais, S.A.*, 2006 WL 2613775, at *5 (S.D.N.Y. Sept. 11, 2006) (dismissing for *forum non conveniens* to "avoid significant duplication of legal efforts by the Courts and the parties, as the subject matter of this dispute and related claims has already been presented and adjudicated in multiple proceedings … in France").

This factor weighs particularly strongly in favor of dismissal because AMNAH itself initiated the English Action. *See Diatronics, Inc. v. Elbit Computers, Ltd.*, 649 F. Supp. 122, 129 (S.D.N.Y. 1986), *aff'd*, 812 F.2d 712 (2d Cir. 1987) (public interest factors support dismissal where plaintiff "has already instituted an action in Israel concerning this matter"). That

significant resources have been expended on the English Action, *see* O'Rourke Decl. ¶¶ 9-13, further favors dismissal. *See Abert Trading, Inc. v. Kipling Belgium N.V/S.A.*, 2002 WL 272408, at \*6 (S.D.N.Y. Feb. 26, 2002) (dismissing on *forum non conveniens* grounds in favor of prior-filed suit "in Belgium covering essentially the same dispute"; "interests of judicial economy would best be served by resolving issues in this case with the Belgian case").

*Second*, AMNAH cannot seriously dispute that this action will require application of foreign law. In the English proceeding, AMNAH pled that the transactions and restatement reflecting those transactions violated Mauritian law. *See* O'Rourke Decl., Ex. 1 ¶ 52 (Release of "ESL's sole shareholder from $1.5 billion liability … constituted: A breach by ESL of sections 61(2), 62(5)(b) and/or 68(4) of the Mauritius Companies Act; and … section 143(1)(c) of the Mauritius Companies Act."). Here, too, AMNAH alleged that "the elimination of the $1.48 Billion Receivable … violated Mauritian law … under the Mauritius Company Act." Compl. ¶ 106. Indeed, the English court explained the restated transaction "may well be governed by the law of Mauritius … or possibly the law of the Cayman Islands." O'Rourke Decl., Ex. 2 ¶ 86.[8]

Moreover, New York choice of law principles dictate that foreign law will govern AMNAH's claims. As to the alleged fraudulent conveyance, foreign law controls where, as here, the relevant conduct took place abroad. *Lyman Com. Sols., Inc. v. Lung*, 2014 WL 476307, at \*3 (S.D.N.Y. Feb. 6, 2014) (that "the location of the defendant's conduct that controls … is well-

---

[8] That the court in the English Action may itself need to apply Mauritian or Cayman law is not justification for retaining jurisdiction. Because the courts of both Mauritius and the Cayman Islands turn to English law for guidance, an English court is better suited to apply Mauritian and Cayman law (and its own law, if necessary) than is this Court. *See Presbyterian Church of Sudan*, 453 F. Supp. 2d at 683 ("When faced with novel questions of corporate law, Mauritian courts turn to English case law for guidance."); *Winn v. Schafer*, 499 F. Supp. 2d 390, 393 (S.D.N.Y. 2007) ("There is also no dispute that where Cayman Islands law is silent, Cayman Islands courts look primarily to English common law for guidance."). In any event, the Mauritian Adversarial Proceeding will ensure that a Mauritian court will resolve the propriety of the transaction under its own law.

settled in the fraudulent conveyance context"); *Atsco Ltd. v. Swanson*, 816 N.Y.S.2d 31, 32-33 (1st Dep't 2006) (applying Malaysian law to the allegedly fraudulent "transfer of assets by a Malaysian citizen out of Malaysia"). AMNAH has not alleged that *any* aspect of the challenged transactions took place in the United States. Nor could it. *See supra* 14.

Foreign law similarly governs the alter ego claim. "[U]nder New York choice of law principles, the law of the state of incorporation determines when the corporate form will be disregarded." *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995) (alterations, citations, and quotations omitted); *Kalb, Voorhis & Co. v. Am. Fin. Corp.*, 8 F.3d 130, 132 (2d Cir. 1993) ("Texas substantive law applies to this alter ego claim because Texas is the place of [the entity's] incorporation."); *Wilson*, 2008 WL 2851511, at *7 (claims related to "internal affairs" of foreign company "governed by the law of" foreign company's place of incorporation).

The application of foreign law required here weighs strongly in favor of dismissal; the "public interest" favors having "a case heard in a forum at home with the law that must govern the case." *Blanco v. Banco Indus. de Venez., S.A.*, 997 F.2d 974, 983 (2d Cir. 1993) (quotations omitted). *See also Monegasque De Reassurances*, 311 F.3d at 500-01 ("Issues governed by the law of Ukraine as well as by Russian law already have been raised. Ukrainian courts are better suited than United States courts for the resolution of these legal questions."); *Fasano*, 482 F. Supp. 3d at 177 ("Plaintiffs' common law claims will be governed by Cayman Islands law. That fact also weighs in favor of dismissal."). Even "the mere likelihood of the application of foreign law weighs in favor of dismissal." *LaSala v. TSB Bank, PLC*, 514 F. Supp. 2d 447, 463 (S.D.N.Y. 2007). *See also Ionnides v. Marika Maritime Corp.*, 928 F.Supp. 374, 379 (S.D.N.Y. 1996) ("While the Court need not definitively resolve the choice of law issue … the likelihood

that foreign law will apply weighs against retention of the action."); *Aenergy*, 2021 WL 1998725, at *20 (similar).

*Third*, because this action fundamentally concerns foreign transactions and the relationships between foreign parties, *supra* 4-6, the interests of the United States in this action are minimal compared to those of foreign forums.  *Murray v. Brit. Broad. Corp.*, 81 F.3d 287, 293 (2d Cir. 1996) (concluding the "United States … has virtually no interest in resolving the truly disputed issues" where "crux of the matter … involves a dispute between British citizens over events that took place exclusively in the United Kingdom"); *Osuna v. Citigroup Inc.*, 2018 WL 6547205, at *11 (S.D.N.Y. Sept. 28, 2018) (holding the public interest factors "weigh strongly in favor of dismissal" where "this dispute is, at bottom, a controversy centered in [a foreign state]").   That this action fundamentally concerns the internal affairs of foreign corporations only bolsters this conclusion.  *Wilson*, 2008 WL 2851511, at *7 (foreign forum "has a strong interest in the affairs of [foreign defendant] and its corporate governance" to ensure "the affairs of [foreign entity] are conducted with integrity and that its judicial system deals efficiently and fairly with complaints about [foreign entity's] management"); *Scottish Air Int'l, Inc. v. British Caledonian Group, PLC*, 81 F.3d 1224, 1233-34 (2d Cir. 1996) (Great Britain had greater interest in litigation involving inquiry into internal affairs of British corporation).

The arbitral award and registered judgment do not create a local interest sufficient to retain jurisdiction:  the Second Circuit has affirmed dismissals for *forum non conveniens* in cases seeking to enforce arbitral awards.  *See, e.g.*, *Monegasque*, 311 F.3d at 500; *Figueiredo Ferraz*, 665 F.3d at 392-93 (dismissing for *forum non conveniens* action to enforce arbitral award against Republic of Peru).  And this court routinely dismisses for *forum non conveniens* actions seeking to enforce arbitral awards against non-parties to the arbitration on alter ego theories.  *See CHS*

*Eur. S.A. v. El Attal*, 2010 WL 3000059, at *2 (S.D.N.Y. July 22, 2010) (dismissing for *forum non conveniens* action to enforce an arbitration award against non-parties to the arbitration on alter ego theory); *Prodprogramma-Impuls Ltd. v. Bank of India*, 2012 WL 2411809, at *3 (S.D.N.Y. June 25, 2012) (dismissing for *forum non conveniens* turnover action that sought to litigate whether affiliate was liable for arbitral award after the court had confirmed the award and entered judgment). *Prodprogramma* is particularly instructive: there, as here, the action sought to enforce an arbitral award that had been transformed into a judgment in this district, the action challenged the relationship between two foreign companies, a court in the home forum of those foreign entities was "already presiding" over the alter ego question, and the alter ego question would be decided under foreign law. *Id.* These considerations compel the same outcome in this case, as "the practical problems that make trial of a case more difficult here ... firmly outweigh the retention of this veil-piercing suit." *Id.* (citations and quotations omitted).

### D.   The Private Interest Factors Strongly Support Dismissal

The private interest factors "pertain[] to the convenience of the litigants—'the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.'" *Monegasque De Reassurances*, 311 F.3d at 500 (quoting *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 507-09 (1947)). "[T]he court should focus on the precise issues that are likely to be actually tried, taking into consideration the convenience of the parties and the availability of witnesses and the evidence needed for the trial of these issues." *Iragorri,* 274 F.3d at 74. These factors, too, uniformly favor dismissal.

Because the transactions that AMNAH is challenging occurred abroad between foreign parties, all of the relevant witnesses and documents are located outside the forum.  In the English

proceeding, AMNAH itself alleges that Ravikant Ruia and Prashant Ruia are the de facto controllers of Essar Global and the entire Essar Group. *See* O'Rourke Decl., Ex. 1 ¶ 49.3. Ravikant Ruia was based in Mauritius during his tenure as director of Essar Steel and Prashant Ruia was based in Dubai during his tenure as director of Essar Steel. Doorbiz Decl. ¶ 6. Unsurprisingly for a company incorporated in and operating out of Mauritius, the relevant Essar Steel managers and directors are located in that forum. *Id.* Specifically, Sushil Baid was a manager of Essar Steel at all relevant times and was based in Mauritius, *id.*; Uday Gujadhar was a director of Essar Steel at all relevant times and is also based in Mauritius, *id*. All four of these individuals are already defendants in the English proceeding, *see* O'Rourke Decl., Ex. 1, heightening the inconvenience of litigating simultaneously in this forum.

The remaining Essar Steel directors who approved the financial statements all work in abroad. Doorbiz Decl. ¶ 6.[9] The Essar Steel board meetings at which the financial statements were approved were held in Mauritius, as were all other Essar Steel board meetings. *Id.* ¶ 8-11. Accordingly, trying this case in New York when "most of the witnesses and documentary evidence reside in a foreign country," would "impose such significant burdens on the parties that dismissal is favored." *Strategic Value*, 421 F. Supp. 2d at 766.

Moreover, the accountants who audited the relevant financial statements are located abroad. Nexia Baker & Arenson, which audited the financials in which the change in accounting treatment was made, is located in Mauritius. Doorbiz Decl. ¶ 11. The individual accountants from the firm that were involved in this project are also based in Mauritius. *Id*. So, too, are the

---

[9] Even if letters rogatory reduce inconveniences associated with foreign witnesses, this Court has a "natural preference for live testimony," and the "time-consuming nature of using letters rogatory" render this method a poor substitute for an action already proceeding without the difficulties in obtaining witnesses that would be present here. *Strategic Value Master Fund, Ltd. v. Cargill Fin. Servs., Corp.*, 421 F. Supp. 2d 741, 769 (S.D.N.Y. 2006).

Deloitte accountants who audited the financial statements for Essar Steel from 2013 through 2015. *Id.* ¶ 10. And the documents pertaining to all the relevant audits are held in Mauritius. *Id.* ¶ 11. The fact that these "non-party witnesses are not subject to the Court's compulsory process weighs heavily in favor of dismissal." *Strategic Value*, 421 F. Supp. 2d at 768; *RIGroup*, 949 F. Supp. 2d at 556 ("[T]he private interest factors weigh heavily in favor of dismissal" because "virtually all of the relevant documentary evidence is [abroad]" and, "[e]ven more important, much of that evidence appears to be in the hands of third parties ... and thus beyond the power of this Court to compel."). In such circumstances, "the private interest factors weigh strongly in favor of litigating this case [abroad]." *Owens v. Turkiye Halk Bankasi A.S.*, 2021 WL 638975, at *6 (S.D.N.Y. Feb. 16, 2021) ("The underlying facts in this litigation involve an alleged fraudulent scheme conducted in large part by a Turkish bank and its Turkish employees in Turkey. The relevant evidence is largely in Turkey.").

The foreign evidence is critical because this is not simply a "summary proceeding to confirm an arbitration award;" rather, AMNAH has brought Essar Global "into the proceeding although [it] was not a party to the agreement providing for arbitration," and to cast "a non-signer of an arbitration agreement ... into liability ... requires extensive discovery and, most probably, a trial of the factual issues implicating and establishing such non-signer liability." *Monegasque De Reassurances*, 311 F.3d at 500 (dismissing because "[t]he evidence required for inquiries of this nature is not to be found in the United States").

Neither Essar Steel nor Essar Global have any presence in New York. Doorbiz Decl. ¶¶ 3-6. AMNAH's pre-motion letter places great emphasis on Mr. Madhu Vuppuluri, a manager of non-party Essar Capital Americas, Inc., who purportedly maintains an office in New York. *See* Pre-Motion Letter, Dkt. 17, at 1. But Mr. Vuppuluri had no involvement whatsoever with: the

planning, approval, or execution of restructuring transactions at issue; the preparation of Essar Steel's financial statements; or the change in accounting treatment in question.  Doorbiz Decl. ¶ 13.  Nor has Mr. Vuppuluri ever had any authority over Essar Global.  *Id*.  Indeed, that Mr. Vuppuluri was not named in (let alone the focus of) any of the proceedings abroad, including the English Action directly implicating the restructuring transactions, *see* O'Rourke Decl., Ex. 1, refutes AMNAH's suggestion that he has any relevance to this dispute.

Finally, the pendency of actions in England and Mauritius regarding the same substantive issues significantly heightens the inconvenience for the parties, weighing against the exercise of jurisdiction.  Indeed, adding a third forum to litigate the same underlying dispute "would surely be more inconvenient to the defendants and witnesses."  *In re Herald*, 540 F. App'x 19, 29 (2d Cir. 2013) (addressing situation where, as in this case, "the choice … is not between one forum or two, but rather between two fora and three, which would surely be more inconvenient.").

## II.   THIS ACTION SHOULD BE DISMISSED IN LIGHT OF SUBSTANTIVELY IDENTICAL PRIOR-FILED PENDING FOREIGN PROCEEDINGS

Adjudicative comity requires this Court to ask whether it should "abstain from exercising jurisdiction in deference to a foreign nation's courts that might be a more appropriate forum for adjudicating the matter."  *In re Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec. LLC*, 917 F.3d 85, 100-01 (2d Cir. 2019).  *See also Ole Media Mgmt., L.P. v. EMI Apr. Music, Inc.*, 2013 WL 2531277, at *2 (S.D.N.Y. June 10, 2013) ("A court has the inherent power to dismiss or stay an action based on the pendency of a related proceeding in a foreign jurisdiction.").  The following factors guide the decision on whether to abstain:  (1) "the similarity of the parties and issues"; (2) "the interests of judicial economy"; (3) "the order in which the actions were filed"; (4) "the adequacy of the alternative forum"; and (5) "the convenience of, and potential prejudice

to, either party." *Id.* at *3 (citing *Royal & Sun Alliance Ins. Co. of Canada v. Century Int'l Arms, Inc.*, 466 F.3d 88, 94 (2d Cir. 2006)).[10]  These factors compel abstention here.[11]

### A.   The Parties And Issues Are Substantially Similar In The First-Filed Foreign Proceedings

The first *Royal & Sun* factor, similarity of parties and issues, is readily satisfied.  "For two actions to be considered parallel, the parties in the actions … must be substantially the same, litigating substantially the same issues in both actions." *Royal & Sun*, 466 F.3d at 94.

*First*, there is complete parallelism between this action and the English and Mauritian proceedings as to the core issues.  AMNAH's English Action advances the exact theory of alleged wrongdoing proffered here:  a theory of a conspiracy to fraudulently transfer Essar Steel's assets to Essar Global through the restatement of the $1.48 billion receivable, thus rendering the former judgment proof.  *See* O'Rourke Decl., Ex. 2 ¶ 14.  *See also supra* 9.  In the English proceeding, AMNAH argued that Essar Global, "stripp[ed]" Essar Steel of its assets by:

---

[10]  AMNAH's pre-motion letter (Dkt. 17 at 2) incorrectly conflates adjudicative comity with prescriptive comity, arguing the requirement that a party invoking *prescriptive comity* identify a conflict between foreign and domestic law applies here.  Not so.  Prescriptive comity poses an entirely different "question of statutory interpretation: should a court presume that Congress, out of respect for foreign sovereigns, limited the application of domestic law on a given set of facts?"  *Picard*, 917 F.3d at 100-01.  Unlike prescriptive comity, adjudicative comity does not require a conflict between foreign and domestic law.  *Freund v. Republic of France*, 592 F. Supp. 2d 540, 573-74 (S.D.N.Y. 2008), *aff'd*, 391 F. App'x 939 (2d Cir. 2010) ("*Hartford Fire* did not forbid abstention on comity grounds in the absence of conflicting laws."); *Mujica v. AirScan Inc.*, 771 F.3d 580, 600 (9th Cir. 2014) ("Since *Hartford Fire,* the circuits have refined the Court's 'true conflict' analysis and have generally required proof of such a conflict only in cases where *prescriptive* comity is at issue …") (emphasis in original).

[11]  No authority supports AMNAH's contention in its pre-motion letter (Dkt. 17 at 2) that the test for prescriptive comity applies in all enforcement actions.  *JW Oilfield Equip., LLC v. Commerzbank, AG*, 764 F. Supp. 2d 587, 596-97 (S.D.N.Y. 2011), applied the test for prescriptive comity only because the plaintiff sought to enforce a judgment against a German bank and "German banking law does not allow a German bank to respond to an execution of a foreign judgment unless ordered to do so by a German court."  No such circumstances exist here and, in any event, this case is not simply an enforcement action, but an attempt to litigate allegedly fraudulent transfers and disregard the corporate form, *see supra* 14.

(1) engaging in "[a] series of transactions in 2012 and 2013 by which Essar Steel was divested of its interest in Essar Steel India … and received nothing in return"; and, (2) restating "Essar Steel's accounts in 2016 to recharacterize as an equity interest what had in the 2014 and 2016 accounts been described as a 'receivable' in the sum of almost US $1.5 billion due to Essar Steel from [Essar Global]." *See* O'Rourke Decl., Ex. 2 ¶¶ 14(i)-(ii). Those allegations are the heart of AMNAH's claims here. *See* Compl. ¶¶ 70-126. AMNAH also advanced its alter ego theory in England. *See* O'Rourke Decl., Ex. 2 ¶ 221(iv). The Mauritian proceeding similarly seeks "the determination of … whether EGFL is presently indebted to ESL in the sum of approximately US$1.5b." *See* Beattie Decl., Ex. 3 ¶ 8; Uteem Decl. ¶ 8. That AMNAH advances different causes of action across fora is immaterial; "[s]uits proceeding under different legal regimes need not plead identical theories of relief when they seek adjudication of substantially similar wrongdoing causing substantially similar injury." *Kingstown*, 2020 WL 5350492, at *6.

*Second*, there is sufficient parallelism as to the parties to warrant dismissal. The English Action includes AMNAH, Essar Global, two other Essar affiliates, and six individual defendants. *See* O'Rourke Decl., Ex. 1. The Mauritius proceedings likewise include AMNAH's predecessor, Essar Steel, and Essar Global. *See* Beattie Decl., Ex. 3; Uteem Decl. ¶ 6. The only absent party from either proceeding is Mesabi Metallics Company LLC, which is named here solely as a garnishee—wrongly so, because the asset to be garnished is not owned by Essar Global, *supra* 21—and is not implicated in any alleged wrongdoing. Accordingly, the addition of this "essentially ancillary party[] does not alter the scope of the alleged misconduct for which [Plaintiff] seeks recover[y] or the likelihood of Plaintiff succeeding in that quest." *Kingstown*, 2020 WL 5350492, at *5 (finding parallelism despite slight difference in parties); *Ole Media*, 2013 WL 2531277, at *3 ("[T]he relevant test is whether the parties are substantially similar.");

*MLC (Bermuda) Ltd. v. Credit Suisse First Boston Corp.*, 46 F. Supp. 2d 249, 251-52 (S.D.N.Y. 1999) ("substantial" and "potentially complete" identity of parties in both actions sufficient to favor dismissal).

### B.   Judicial Economy Strongly Favors Abstention

The second and third *Royal & Sun* factors, interests of judicial economy and the order in which the actions were filed, strongly favor abstention to allow the pending foreign proceedings to be resolved first.   AMNAH itself initiated the English Action roughly two years before this case, *supra* 8.  And courts accord "great weight to the first suit filed," *United Bank for Africa PLC v. Coker*, 2003 WL 22741575, at *3 (S.D.N.Y. Nov. 18, 2003); *Louis Vuitton N. Am., Inc. v. Schenker S.A.*, 2019 WL 1507792, at *9 (E.D.N.Y. Mar. 31, 2019) ("[I]t is material that LVNA is the plaintiff in both actions and originally chose France as the forum when it commenced proceedings."), particularly where, as here, the first-filed foreign suit was commenced years before the second-filed suit.   *United Bank*, 2003 WL 22741575, at *3; *Caspian Invs. Ltd. v. Vicom Holdings, Ltd.*, 770 F. Supp. 880, 885 (S.D.N.Y. 1991); *Advantage Int'l Mgmt., Inc. v. Martinez*, 1994 WL 482114, at *3 (S.D.N.Y. Sept. 7, 1994) (holding that three years between filings weighed in favor of deference to first-filed, foreign action). Accordingly, "[t]his is … not a case in which a party was forced into an undesirable and inadequate forum which produced an unjust result.  Rather, it is one in which the party's chosen forum produced a disappointing result which the party now seeks to re-litigate …." *Galley Schuler v. Rainforest All., Inc.*, 161 F. Supp. 3d 298, 317 (D. Vt. 2016), *aff'd*, 684 F. App'x 77 (2d Cir. 2017) (dismissing on comity grounds).

The deference owed towards first-filed foreign proceedings exists for good reason; expenditure of this Court's judicial resources is particularly unwarranted where a foreign court "has already developed familiarity with the contracts and events in dispute."   *Thornton*

*Tomasetti, Inc. v. Anguillan Dev. Corp.*, 2015 WL 7078656, at *4 (S.D.N.Y. Nov. 13, 2015) (cautioning against "duplicating the [foreign] court's work").

Moreover, the evidence in this case is located abroad, and is subject to different foreign laws that will make discovery in this suit contentious and difficult. *See United Bank*, 2003 WL 22741575, at *3 ("judicial efficiency" interests weighed in favor of deference where witnesses were located in Nigeria). And both the English and Mauritian proceedings will involve legal determinations that will "undoubtedly affect, likely significantly, the resolution of this action." *Ole Media*, 2013 WL 2531277, at *4; *see also Argus Media Ltd. v. Tradition Fin. Servs.*, 2009 WL 5125113, at *6 (S.D.N.Y. Dec. 29, 2009) ("[T]o allow the UK Action to proceed without parallel litigation in this Court would be instructive on the ultimate resolution of the [domestic claim]."). Accordingly, judicial economy will be better served through abstention.

### C. Litigating Here Is Inconvenient And Prejudicial To Essar Global

The fifth *Royal & Sun* factor,[12] addressing the balance of inconvenience and prejudice to either party, also weighs in favor of abstention. Essar Global will be both inconvenienced and prejudiced by having to defend against simultaneous actions involving substantially similar issues and parties, exposing it to the risk of inconsistent judgments and duplicative discovery. *Ole Media*¸ 2013 WL 2531277, at *5 (holding "[t]here [can be] no doubt that [Defendant] is significantly inconvenienced by allowing both actions to proceed, given the … duplication among them"). This is the *third* ongoing action, in a *third* forum, concerning the propriety of the restructuring transactions and change in accounting treatment in Essar Steel's 2016 audited financial statements. *Supra* 7-10. Indeed, beyond the costs of litigating the same issues in a different jurisdiction, "the potential witnesses with the most relevant testimony regarding [Essar

---

[12]   Both England and Mauritius are adequate alternative fora, *supra* 18-21, satisfying the fourth *Royal & Sun* factor.

Steel and Essar Global's] corporate relationships, practices, and patterns of financial transactions are employees of those entities, all of whom are located in foreign jurisdictions." *See* Beattie Decl., Ex. 2 at 47. This amounts to a significant inconvenience to litigating in this forum. *Evergreen Marine Corp. v. Welgrow Int'l, Inc.*, 954 F. Supp. 101, 104 (S.D.N.Y. 1997) (fairness and convenience favored the foreign proceeding where all witnesses and evidence were located in the foreign jurisdiction); *Thornton*, 2015 WL 7078656, at *5.

AMNAH, however, suffers no prejudice if it is forced to litigate in the forum it selected. *Ole Media*, 2013 WL 2531277, at *5 (holding plaintiff suffers no prejudice where it "has chosen to file these actions in two separate courts"). AMNAH "cannot be prejudiced by its own choice of forum." *Louis Vuitton N. Am., Inc.*, 2019 WL 1507792, at *9.

### D.    Additional Exceptional Circumstances Warrant Abstention

The balance of the *Royal & Sun* factors indicates whether exceptional circumstances exist. *Kingstown*, 2020 WL 5350492, at *5 (explaining the five factors "are useful in deciding whether exceptional circumstances exist"); *Ole Media*, 2013 WL 2531277, at *3 ("[T]o determine whether exceptional circumstances exist …. [t]he Second Circuit has articulated five nonexclusive factors[.]") (quotations omitted). Because all five factors favor abstention here, the exceptional circumstances necessary for abstention exist.

Two additional factors support abstention here. *First*, this action implicates the assets of a foreign company (Essar Steel) under administration, and "[f]oreign bankruptcy proceedings" are "one discrete category of foreign litigation that generally requires the dismissal of parallel district court actions." *Royal & Sun*, 466 F.3d at 92-93. The existence of foreign bankruptcy proceedings constitute "exceptional circumstances" that demand deference. *Id.* at 95. "This rationale makes sense where a creditor, unable to recover against a debtor in foreign court, attempts to do so in our courts," *Picard*, 917 F.3d at 104, because "[a] foreign nation's interest in

33

the equitable and orderly distribution of a debtor's property is an interest deserving of particular respect and deference," *Royal & Sun*, 466 F.3d at 93 (quotations omitted).

*Second*, that "New York's link to the facts underlying this litigation is tenuous" also favors abstention. *Kingstown*, 2020 WL 5350492, at *6. As explained *supra* 12-17, this forum has no connection to AMNAH's substantive claims pressed here, and those claims are governed by foreign law. "It would burden both the Court and the jurors to learn and apply foreign substantive law to this dispute between non-resident parties." *See* Beattie Decl., Ex. 2 at 50. This burden favors dismissal. *See Galley Schuler*, 161 F. Supp. 3d at 318 (dismissing on comity grounds "claim with a minimal relationship to [the forum]" and "wholly dependent" on foreign law); *Thornton Tomasetti*, 2015 WL 7078656, at *5.[13]

### E.     At A Minimum, This Court Should Stay This Action Pending Resolution Of The Foreign Proceedings

In the alternative, this Court should stay the action pending resolution of the foreign proceedings. "A stay is a 'lesser intrusion on the principle of obligatory jurisdiction' than a dismissal, allowing the Court to retain jurisdiction while ensuring that the [foreign] action results in a final judgment with preclusive effect here, such that the rights of both parties are protected." *Thornton Tomasetti*, 2015 WL 7078656, at *5 (quoting *Royal & Sun Alliance*, 466 F.3d at 96). Accordingly, a "stay of this action would advance the interest of judicial economy by avoiding duplicative litigation of an identical issue." *Ole Media*, 2013 WL 2531277, at *4.

---

[13]    That the New York Convention contemplates simultaneous enforcement proceedings, *see Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 335 F.3d 357, 368 (5th Cir. 2003), is a red herring. This action is not brought under the New York Convention. Nor is this action a "summary proceeding to confirm an arbitration award," *see Monegasque De Reassurances*, 311 F.3d at 500, but rather an attempt to pierce Essar Steel's corporate veil and to litigate alleged fraudulent transfers all subject to foreign law.

## CONCLUSION

The Complaint should be dismissed pursuant to the doctrines of *forum non conveniens* and adjudicative comity or, in the alternative, stayed pending resolution of the prior-filed foreign proceedings.

Dated: January 14, 2022
      New York, New York

                QUINN EMANUEL URQUHART &
                SULLIVAN, LLP

                By: */s/ Rollo C. Baker*
                Rollo C. Baker
                Todd Beattie
                51 Madison Avenue, 22nd Floor
                New York, New York 10010
                (212) 849-7000

                *Attorneys for Defendant Essar Global Fund*
                *Limited and Garnishee Mesabi Metallics*
                *Company LLC*