# Exhibit 1

STATE OF MINNESOTA

IN DISTRICT COURT

COUNTY OF ITASCA

NINTH JUDICIAL DISTRICT
Case Type: Other Civil

| | |
|---|---|
| ArcelorMittal USA LLC,<br><br>        Plaintiff,<br><br>v.<br><br>Essar Steel Ltd.,<br>Essar Global Fund Limited,<br>Essar Steel Asia Holdings Ltd.,<br>Essar Steel Middle East Fze,<br>and Prashant Ruia,<br><br>        Defendants. | Case No. _____<br><br><br>**SUMMONS** |

THIS SUMMONS IS DIRECTED TO THE ABOVE-NAMED DEFENDANTS.

1.  **YOU ARE BEING SUED**. The Plaintiff has started a lawsuit against you. The Plaintiff's Complaint against you is attached to this summons. Do not throw these papers away. They are official papers that affect your rights. You must respond to this lawsuit even though it may not yet be filed with the Court and there may be no court file number on this summons.

2.  **YOU MUST REPLY WITHIN 20 DAYS TO PROTECT YOUR RIGHTS**. You must give or mail to the person who signed this summons **a written response** called an Answer within 20 days of the date on which you received this Summons. You must send a copy of your Answer to the person who signed this summons located at:

> Karl C. Procaccini
> Greene Espel PLLP
> 222 S. Ninth Street, Suite 2200
> Minneapolis, MN  55402
> UNITED STATES

3.  **YOU MUST RESPOND TO EACH CLAIM.** The Answer is your written response to the Plaintiff's Complaint. In your Answer you must state whether you agree or disagree with each paragraph of the Complaint. If you believe the Plaintiff should not be given everything asked for in the Complaint, you must say so in your Answer.

1

Filed in Ninth Judicial District Court
3/2/2018 1:50 PM
Itasca County, MN

4.    **YOU WILL LOSE YOUR CASE IF YOU DO NOT SEND A WRITTEN RESPONSE TO THE COMPLAINT TO THE PERSON WHO SIGNED THIS SUMMONS.** If you do not Answer within 20 days, you will lose this case. You will not get to tell your side of the story, and the Court may decide against you and award the Plaintiff everything asked for in the complaint. If you do not want to contest the claims stated in the complaint, you do not need to respond. A default judgment can then be entered against you for the relief requested in the complaint.

5.    **LEGAL ASSISTANCE.** You may wish to get legal help from a lawyer. If you do not have a lawyer, the Court Administrator may have information about places where you can get legal assistance. **Even if you cannot get legal help, you must still provide a written Answer to protect your rights or you may lose the case**.

6.    **ALTERNATIVE DISPUTE RESOLUTION.** The parties may agree to or be ordered to participate in an alternative dispute resolution process under Rule 114 of the Minnesota General Rules of Practice. You must still send your written response to the Complaint even if you expect to use alternative means of resolving this dispute.

Dated:   3/2/2018                     **GREENE ESPEL PLLP**

                                       s/Karl C. Procaccini
                                       Clifford M. Greene, Reg. No. 0037436
                                       Jenny Gassman-Pines, Reg. No. 0386511
                                       Karl C. Procaccini, Reg. No. 0391369
                                       222 S. Ninth Street, Suite 2200
                                       Minneapolis, MN  55402
                                       cgreene@greeneespel.com
                                       jgassman-pines@greeneespel.com
                                       kprocaccini@greeneespel.com
                                       (612) 373-0830

                                       *Attorneys for Plaintiff*

STATE OF MINNESOTA                          IN DISTRICT COURT

COUNTY OF ITASCA                        NINTH JUDICIAL DISTRICT
                                           Case Type: Other Civil

ArcelorMittal USA LLC,

                                            Case No. _____
                  Plaintiff,

v.

                                              **COMPLAINT**
Essar Steel Ltd.,
Essar Global Fund Limited,                 **[JURY TRIAL DEMANDED]**
Essar Steel Asia Holdings Ltd.,
Essar Steel Middle East Fze,
and Prashant Ruia,

                  Defendants.

Plaintiff ArcelorMittal USA LLC ("ArcelorMittal USA") hereby brings this Complaint

against Defendants Essar Steel Ltd. ("Essar Steel"), Essar Global Fund Limited ("Essar

Global"), Essar Steel Asia Holdings Ltd. ("Essar Asia"), Essar Steel Middle East Fze ("Essar

Middle East"), and Prashant Ruia.

## I.    INTRODUCTION

1.     ArcelorMittal USA brings this action against Essar Steel, its affiliates, and a

director, who stripped Essar Steel of its assets in an attempt to avoid claims by Essar Steel's

creditors, such as ArcelorMittal USA's arbitration award against Essar Steel.

2.     In January 2014, Essar Steel, its affiliate Essar Steel Minnesota LLC ("Essar

Minnesota"), and ArcelorMittal USA entered into an Amended and Restated Pellet Sale and

Purchase Agreement (the "Pellet Sale Agreement") pursuant to which Essar Steel and Essar

Minnesota agreed to supply a large quantity of iron ore from a mine in Nashwauk,

Filed in Ninth Judicial District Court
3/2/2018 1:50 PM
Itasca County, MN

Minnesota (the "Nashwauk Project") to ArcelorMittal USA.  That never happened, and in July 2016 Essar Minnesota filed bankruptcy in the United States Bankruptcy Court for the District of Delaware.

3.      ArcelorMittal USA pursued a claim against Essar Steel for breach of the Pellet Sale Agreement in the International Court of Arbitration of the International Chamber of Commerce (the "ICC Arbitration").[1]  On December 19, 2017, the ICC arbitral tribunal issued a Final Award (the "ICC Final Award") awarding ArcelorMittal USA damages in excess of $1.38 billion.  Essar Steel has not complied with the ICC Final Award or paid any portion of the damages awarded to ArcelorMittal USA.

4.      In the course of pursuing its claims for breach of contract, ArcelorMittal USA discovered that Essar Global and others had engaged in a scheme to strip Essar Steel of its assets, leaving Essar Steel a worthless shell.  Essar Steel assets were fraudulently transferred to its affiliates, leaving Essar Steel unable to meet its obligations.  Essar Global also routinely engaged in a shell game, transferring money and assets among affiliates and disregarding corporate formalities for the benefit of Essar Global and its ultimate owners, the Ruia family.  These actions took place at the direction of, among others, Prashant Ruia, the Chief Executive Officer of Essar Global and a director of Essar Steel.

---

[1] ArcelorMittal USA also filed a proof of claim in Essar Minnesota's bankruptcy case.  On December 28, 2017, the bankruptcy court approved a settlement between ArcelorMittal USA and Essar Minnesota (no longer controlled by Essar Global insiders) which allowed a $605 million ArcelorMittal USA claim for breach of the Amended Pellet Sale Agreement. Whether ArcelorMittal USA ultimately recovers anything on that claim depends on whether a litigation trust established as part of the plan of reorganization for Essar Minnesota achieves any meaningful recoveries.

5.      By this Complaint, ArcelorMittal USA seeks a judgment (1) avoiding the fraudulent transfers from Essar Steel to its affiliates that left Essar Steel undercapitalized and unable to meet its obligations, and awarding damages from the transferees and Prashant Ruia, who aided and abetted and conspired in the fraudulent transfers of assets; (2) piercing the corporate veil between Essar Steel and Essar Global and finding that Essar Global is liable for the ICC Final Award; and (3) declaring that Essar Steel was operated as an agent of Essar Global and is liable for the ICC Final Award.

## II.   PARTIES

6.      Plaintiff ArcelorMittal USA is a limited liability company organized under the laws of Delaware, with its headquarters at 1 South Dearborn, 19th Floor, Chicago, Illinois 60603.  ArcelorMittal USA is one of the largest steelmakers in North America.  It employs approximately 20,000 people through its operations in 13 states, including mining operations in Virginia and Minnesota.

7.      ArcelorMittal USA is a subsidiary of ArcelorMittal S.A., a *société anonyme* incorporated under Luxembourg law.  ArcelorMittal S.A. wholly owns ArcelorMittal USA indirectly through a series of Delaware limited liability companies and an S.a.r.l. (Ispat Inland S.a.r.l.) organized in Luxembourg.  ArcelorMittal S.A. is the world's largest steel and mining company.

8.      Defendant Essar Steel is organized under the laws of Mauritius.  Essar Steel is a wholly-owned subsidiary of Essar Global.

9.      Defendant Essar Global is organized under the laws of the Cayman Islands with offices in Asia, Africa, Europe, and the Americas.  Essar Global is an investment fund

3

Filed in Ninth Judicial District Court
3/2/2018 1:50 PM
Itasca County, MN

overseeing a worldwide conglomerate of companies. Essar Global is the ultimate parent of dozens of subsidiaries (collectively, the "Essar Group"), involved in a diverse array of industries including steel, mining, oil and gas, shipping, and construction. Essar Global is owned or controlled by Shashi Ruia, Ravi Ruia, Prashant Ruia, Anshuman Ruia, and Rewant Ruia (collectively, the "Ruia Family").

10.     Defendant Essar Asia is organized under the laws of Mauritius. Essar Asia is a wholly-owned indirect subsidiary of Essar Global. Essar Asia currently is the majority shareholder in Essar Steel India Ltd. ("Essar India"), which operates Essar's steel-making business in India and is currently the subject of an Indian insolvency proceeding.

11.     Defendant Essar Middle East is organized under the laws of the United Arab Emirates and is based in Dubai. Essar Middle East is a wholly-owned subsidiary of Essar India. Essar Steel Middle East currently is the owner of Essar Steel UAE Limited ("Essar UAE"), which is organized under the laws of the United Arab Emirates and is based in Dubai.

12.     On information and belief, Defendant Prashant Ruia is a resident of Mumbai, India. Prashant Ruia is the CEO of Essar Global and has at various times served as a director of Essar Steel, Essar India and other Essar Group entities. Along with the other members of the Ruia Family, Prashant Ruia exerts ultimate control over Essar Global, Essar Steel, and their affiliates.

13.    The following graphic is a simplified representation of the corporate relationship among the various Essar Group entities discussed in this Complaint, with the shaded boxes indicating the Defendants in this action:



## III.  **JURISDICTION AND VENUE**

14.    The Court has personal jurisdiction over Defendants because each of them has committed acts within Minnesota and this judicial district which give rise to this Complaint, or has established minimum contacts with Minnesota such that the exercise of jurisdiction over each of the Defendants would not offend traditional notions of fairness and substantial justice.

5

15.    This Court has personal jurisdiction over Defendant Essar Steel because Essar Steel is a party to the Pellet Sale Agreement with ArcelorMittal USA, which was in part negotiated and was to be performed in Nashwauk, Minnesota.  In the Pellet Sale Agreement, Essar Steel specifically agreed that the ICC Final Award "may be enforced in any court of competent jurisdiction, including without limitations the federal and state courts in Minnesota and Illinois, *and the parties agree to submit to the Jurisdictions of Minnesota and Illinois federal and state courts*."  (Pellet Sale Agreement § 12(h) (emphasis added).)

16.    This court also has jurisdiction over Essar Steel, Essar Global, and Essar Asia because this action relates to Essar Global's efforts to construct the Nashwauk Project, an open pit iron mine on the western edge of the Mesabi iron range in Minnesota.  Essar Global and Essar Steel directly interacted with Minnesota state and local governmental officials in connection with efforts to obtain subsidies for the Nashwauk Project and otherwise establish the Essar Group's ability to carry out the Nashwauk Project.  Essar Global is party to certain agreements with Itasca County and the state of Minnesota in connection with subsidies given to the Nashwauk Project.  Essar Global, Essar Steel, and Essar Asia also guaranteed various obligations undertaken by Essar Minnesota in connection with the Nashwauk Project, including agreements providing financing for the Nashwauk Project.

17.    This court also has jurisdiction over Essar Asia and Essar Middle East because they were the recipients of fraudulent transfers from Essar Steel which were carried out to shield Essar Steel from creditor claims such as the ICC Final Award.

6

18.     This court has jurisdiction over Prashant Ruia because he was actively involved in the Nashwauk Project, including participating in negotiations with ArcelorMittal USA regarding the Pellet Sale Agreement.  Prashant Ruia served as a director of Essar Minnesota, and is a director of Essar Steel and the CEO of Essar Global.  Prashant Ruia was also involved in fraudulent transfers from Essar Steel which were carried out to shield Essar Steel from creditor claims such as the ICC Final Award.

19.     Further, through the activities of Essar Steel and Essar Global in Minnesota, and as a result of the close interconnection between Essar Steel, Essar Global, Essar Asia, and Essar Middle East, including their symbiotic relationships and consolidation of corporate image and operations, each Defendant is subject to personal jurisdiction in the State of Minnesota.  Essar Steel's and Essar Global's contacts with the State of Minnesota should be attributed to each of the Defendants under theories of alter ego, veil piercing, mere instrumentality and/or agency.

20.     Given their extensive contacts with the United States, numerous of state and federal courts have found a basis to exercise jurisdiction over the Defendants:

  a.     The United States District Court for the District of Minnesota and Minnesota District Court for Ramsey County exercised personal jurisdiction over Essar Global and Essar Steel in parallel cases arising from the supply of natural gas to the Nashwauk Project.[2]  Similarly, Minnesota

---

[2] *Great Lakes Gas Transmission Ltd. P'ship v. Essar Steel Minnesota, LLC et al.*, No. 09-CV-03037-SRN/LIB (D. Minn.); *Great Lakes Gas Transmission Limited P'ship v. Essar Steel Minnesota LLC et al.*, No. 62-CIV-15-1024 (Minn. Dist. Ct. Ramsey County).

Filed in Ninth Judicial District Court
3/2/2018 1:50 PM
Itasca County, MN

state courts have exercised personal jurisdiction over Essar Global in litigation brought by the County of Itasca related to agreements to repay subsidies provided to the Nashwauk Project;[3] and

  b. Federal and state courts outside of Minnesota have found sufficient contacts with the United States to exercise jurisdiction over Essar Global, Essar Steel, and Essar Asia in Nashwauk Project-related litigation.  In a case pending before the United States District Court for the Southern District of New York, Defendants Essar Global, Essar Steel, and Essar Asia consented to jurisdiction and entered into a stipulated judgment against them in April 2017 in the amount of $588,415,307.02.[4]  Several New York state courts also have exercised jurisdiction over Essar Steel and Essar Global in litigation arising from the Nashwauk Project.[5]

21. Venue is proper in this district under Minn. Stat. § 542.09 because Plaintiff is permitted to bring an action in any county if none of the Defendants reside in this state. Moreover, venue is also proper in this district under Minn. Stat. § 542.09 because the causes of action pled in this complaint relate to a contract to be performed in this county, and Defendants' efforts to avoid responsibility for damages arising from breach of that contract.

---

[3] *County of Itasca v. Essar Global Fund, Limited*, No. 31-CV-17-959 (Minn. Dist. Ct. Itasca County).

[4] *ICICI Bank Ltd. v. Essar Global Fund Ltd. et al.*, No. 1:16-cv-07836-GHW (S.D.N.Y.).

[5] *Bank of India, N.Y. Branch v. Essar Steel Holdings Ltd.*, No. 655315/2016 (N.Y. Sup. Ct.); *Atlantic Specialty Insurance Co. v. Essar Steel Minnesota et al.*, No. 652199/2016 (N.Y. Sup. Ct.); *Barclays Bank PLC et al. v. Essar Global Fund Ltd.*, No. 157086/2016 (N.Y. Sup. Ct.).

Filed in Ninth Judicial District Court
3/2/2018 1:50 PM
Itasca County, MN

## IV.   FACTUAL BACKGROUND

### The Nashwauk Project

22.    Essar Steel purchased Minnesota Steel Industries LLC in October 2007 and changed the company's name to Essar Steel Minnesota LLC.  Essar Steel acquired Essar Minnesota on behalf of the Essar Group ostensibly to complete the Nashwauk Project, a large open pit iron ore mine on the western edge of the Mesabi iron range in Minnesota which was to include a pelletizing plant.

23.    Essar Group entities sought multi-million dollar subsidies for the Nashwauk Project from the State of Minnesota and local governments.  The proposed subsidies were negotiated by Essar Global, Essar Steel, and Essar Minnesota with the State of Minnesota and Itasca County.

24.    Thereafter, in September 2008, Essar Global entered into agreements with Itasca County and the State of Minnesota whereby Essar Global secured business subsidies totaling approximately $65 million for the development of infrastructure, road, and rail improvements necessary for the Nashwauk Project.  Essar Global agreed that it would be responsible for repayment for some or all of the $65 million subsidy in the event that the Nashwauk Project did not create a certain number of jobs.

25.    Essar Group entities thereafter commenced the development and construction of the project, and purported to secure hundreds of millions of dollars of debt and equity financing for the construction of the project.  Essar Global, Essar Steel, Essar Asia, and other Essar Group entities provided guaranties on behalf of Essar Minnesota. Essar Global also made promises of direct cash contributions to the Nashwauk Project and

9

Filed in Ninth Judicial District Court
3/2/2018 1:50 PM
Itasca County, MN

to fund any deficiency that may exist between the total cost of the project and available financing. The total amount of debt financing for which one or more of the Defendants provided guaranties exceeds $1 billion.

26.    However, over the course of the Nashwauk Project, Essar Group entities, at the direction of Essar Global and members of the Ruia Family, reneged on their financing commitments and siphoned funds from the project through intra-company transactions, leaving it strapped for cash and eventually bringing construction of the project to a halt.

27.    In 2014, Essar Minnesota secured approximately $450 million in bond debt to complete construction of the Nashwauk Project. Investors agreed to purchase bonds, but only on the condition that Essar Global make an equity contribution of more than $400 million to Essar Minnesota. The bonds were sold and the proceeds were placed in escrow, to be released once Essar Global made its full equity contribution to Essar Minnesota. Essar Global never contributed the required equity and the bond deal fell through.

28.    Thereafter, Essar Minnesota replaced the bond financing with term loans. Like the bonds, the release of proceeds from the term loans were conditioned on equity contributions from Essar Global. Essar Global also guaranteed Essar Minnesota's term loan obligations. Essar Global again failed to make the full amount of the required equity contributions.

29.    According to an adversary complaint[6] filed against Essar Global and certain of its affiliates by Essar Minnesota's bankruptcy estate, Essar Global not only failed to

---

[6] *Essar Steel Minnesota LLC v. Essar Global Fund Limited et al*, No. 17-50001-BLS (Bankr. D. Del.).

10

provide promised funding to Essar Minnesota, but also stripped hundreds of millions of dollars from Essar Minnesota for the benefit of Essar Global, its executives, and its affiliates. Moreover, according to the adversary complaint, equity contributions made by Essar Global actually were funded by circular inter-company loans from Essar Minnesota.

30.    With Essar Global siphoning off the funds that Essar Minnesota needed to secure lending, by the fall of 2015 Essar Minnesota was running out of funding to keep the Nashwauk Project alive, and had stopped paying many contractors.  In December 2015, Essar Minnesota reached an agreement with the State of Minnesota under which it promised to make good on those obligations.  However, after Essar Minnesota missed the deadlines for those payments, Minnesota Governor Mark Dayton announced that the State would terminate Essar Minnesota's mineral leases unless Essar Minnesota paid its obligations to the state, Itasca County, and its vendors by July 1, 2016.

31.    On July 8, 2016, Governor Dayton announced that the State of Minnesota was terminating Essar Minnesota's mineral leases.  In response, that same day Essar Minnesota filed for bankruptcy protection under Chapter 11 of the U.S. Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware.

### The Pellet Sale Agreement and Arbitration Award

32.    In December 2012, Essar Minnesota and another Essar entity, Essar Resources, Inc. ("Essar Resources"), entered into a Pellet Sale and Purchase Agreement with ArcelorMittal USA pursuant to which Essar Minnesota and Essar Resources were required to supply a large quality of iron ore pellets from the Nashwauk Project to ArcelorMittal USA for a ten-year period beginning no later than July 1, 2014.

11

Filed in Ninth Judicial District Court
3/2/2018 1:50 PM
Itasca County, MN

33.    That agreement was negotiated with Essar Group personnel in Minnesota and New York.

34.    By late 2013, it was clear that Essar Minnesota could not meet the July 1, 2014 deadline for production and delivery established in the 2012 Pellet Sale and Purchase Agreement.  ArcelorMittal USA accommodated Essar Minnesota by executing the Pellet Sale Agreement in which ArcelorMittal USA agreed to extend the date for commencement of production and delivery from July 1, 2014 to July 1, 2015.

35.    The Pellet Sale Agreement was negotiated with Essar Group personnel in Minnesota and in New York.

36.    The Pellet Sale Agreement substituted Essar Steel (Essar Minnesota's parent company) as a party in place of Essar Resources.  The substitution of Essar Steel for Essar Resources was necessary because during negotiations, ArcelorMittal USA learned that Essar Resources was in fact not the parent company of Essar Minnesota as had been previously represented to ArcelorMittal USA.  Essar Group personnel did not disclose to ArcelorMittal USA that Essar Steel had, or would be, transferring substantially all of its assets to other Essar Group affiliates.

37.    By June 2015, it had become clear that Essar Minnesota and Essar Steel again would not meet their obligations to commence production and delivery by the deadline specified in the Pellet Sale Agreement.  ArcelorMittal USA again accommodated the Essar Group entities by executing another amendment to the Pellet Sale Agreement that, among other things, further extended the date for commencement of production and delivery to July 1, 2016.

38.    In December 2015, in connection with efforts to convince ArcelorMittal USA to agree to a further extension of the deadline for commencement of production and delivery, Essar Global provided a letter to ArcelorMittal USA indicating that it was the ultimate shareholder of Essar Minnesota, had made substantial contributions of equity to Essar Minnesota, had guaranteed the debts of Essar Minnesota, and had undertaken the obligation to fund any shortfall between the total cost of the Nashwauk Project and available financing.

39.    Prashant Ruia negotiated with ArcelorMittal USA regarding performance, and potential amendment of, the Pellet Sale Agreement.

40.    By May 2016, it had become clear that Essar Minnesota and Essar Steel could not and would not perform.  Accordingly, on May 27, 2016, ArcelorMittal USA notified Essar Minnesota and Essar Steel that it was terminating the Pellet Sale Agreement.

41.    On August 9, 2016, ArcelorMittal USA initiated the ICC Arbitration against Essar Steel for breach of the Pellet Sale Agreement.[7]  In the arbitration, ArcelorMittal USA sought damages resulting from its need to purchase substitute iron ore from other suppliers at higher prices.

---

[7] The Pellet Sale Agreement provides that disputes between the parties would be resolved by arbitration under the rules of the International Chamber of Commerce's International Court of Arbitration in Minneapolis, Minnesota.  (Pellet Sale Agreement § 12.)  It further provides that any arbitration award "may be enforced in any court of competent jurisdiction, including without limitations the federal and state courts in Minnesota and Illinois, and the parties agree to submit to the jurisdictions of the Minnesota and Illinois federal and state courts."  (Pellet Sale Agreement § 12(h).)

13

42.     On December 19, 2017, the ICC arbitral tribunal issued the ICC Final Award finding in favor of ArcelorMittal USA and against Essar Steel, and ordered the following relief:

> 170.     WHEREFORE, for the reasons set forth above, the undersigned Arbitrators hereby declare and ORDER as follows:
>
> (a)     Essar Steel Minnesota LLC anticipatorily repudiated the Agreement, and Essar Steel Ltd. is jointly and severally liable for the consequences of that anticipatory breach of the Agreement.
>
> (b)     ArcelorMittal USA LLC properly terminated the Agreement on May 27, 2016.
>
> (c)     ArcelorMittal USA LLC shall recover from Essar Steel Ltd. the sum of $1,379,457,503 as damages.
>
> (d)     ArcelorMittal USA LLC also shall recover from Essar Steel Ltd. the sum of $1,533,853.04 as costs of the arbitration.
>
> (e)     ArcelorMittal USA LLC is entitled to recover interest payable by Essar Steel Ltd. at the rate of 8.60%, compounded, on a total principal amount of $1,380,991,356.04, from the date of this Award until its payment or the entry of a judgment enforcing it.
>
> (f)     All other claims and counterclaims in the arbitration are denied.

43.     Despite requests from ArcelorMittal USA that it do so, Essar Steel has not complied with the ICC Final Award or paid any portion of the ICC Final Award.

44.     On January 11, 2018, ArcelorMittal USA filed a Petition to Confirm the ICC Final Award in the United Stated District Court for the District of Minnesota, which was assigned Docket No. 18-cv-83 (DWF/LIB) and assigned to the Honorable Donovan W. Frank.  On January 31, 2018, ArcelorMittal USA filed a motion to confirm the ICC Final Award.  A hearing on ArcelorMittal USA's petition is currently scheduled for a hearing on March 30, 2018.  As of the date of this Complaint, Essar Steel has not appeared in that proceeding.

14

45. While the confirmation proceedings are not yet complete, ArcelorMittal USA has grave concerns that Essar Steel and the other Defendants have taken and are continuing to take actions to shield Essar Steel's assets from creditors such as ArcelorMittal USA. Accordingly, ArcelorMittal USA has commenced this action to ensure that all of ArcelorMittal USA's claims for fraudulent transfer, aiding and abetting fraudulent transfers, conspiracy to engage in fraudulent transfers, veil piercing, alter ego, and related claims are preserved.

### Essar Group's Efforts To Shield Essar Steel Assets From The Reach Of Creditors

46. As the ICC Arbitration progressed, ArcelorMittal USA learned that Essar Global has been engaged in a scheme to thwart the collection efforts of Essar Steel's creditors such as ArcelorMittal USA.

47. One part of this scheme was to strip Essar Steel of its assets, leaving Essar Steel insolvent and unable to meet its obligations to ArcelorMittal USA.

48. These transfers were just one part of an elaborate shell game played by Essar Global. Essar Global has operated its entire organization as a single unified organization, disregarding the separate corporate form of Essar Steel and other Defendants, and using those entities as alter egos for the broader interests of the Essar Global more generally.

49. Indeed, on information and belief, Essar Global CEO Prashant Ruia has been a director of Essar Steel at all times relevant to this Complaint. Mr. Ruia has used his position to exert control over Essar Steel, directing the company to take actions that are detrimental to Essar Steel, its shareholders, and its creditors, all for the ultimate benefit of Essar Global and his family.

15

Filed in Ninth Judicial District Court
3/2/2018 1:50 PM
Itasca County, MN

**The Essar Steel Transfers**

50. At the start of the Nashwauk Project, Essar Steel boasted that it held significant assets. In a June 2008 letter to the Itasca County Board of Commissioners, Essar Steel (then known as Essar Steel Holdings Ltd.) represented that it had an estimated net worth of $5 billion, generated minimum cash of $2 billion each year, and had an enterprise value of $22 billion.

51. But Essar Steel thereafter transferred virtually all of its valuable assets and businesses to its affiliates.

52. One of these holdings was ownership of Essar Group's steel business in India, Essar India. On or about June 30, 2012 Essar Steel transferred approximately 1.9 billion shares in Essar India to Essar Asia (the "Essar Asia 2012 Transfer"). The Essar Asia 2012 Transfer left Essar Steel with only a small remaining stake in Essar India. On information and belief, the Essar Asia 2012 Transfer was directed by Prashant Ruia and Essar Global.

53. On information and belief, Essar Steel received little or no consideration for the Essar Asia 2012 Transfer.

54. A year later, Essar Steel made yet another transfer of all or nearly all of its remaining interests in Essar India to Essar Asia. On August 26, 2013, Essar Steel transferred approximately 118,000,000 shares of its equity in Essar India to Essar Asia (the "Essar Asia 2013 Transfer"). The Essar Asia 2013 Transfer left Essar Steel with only minimal holdings in Essar India. On information and belief, the Essar Asia 2013 Transfer was directed by Prashant Ruia and Essar Global.

Filed in Ninth Judicial District Court
3/2/2018 1:50 PM
Itasca County, MN

55.     On paper, Essar Asia paid Essar Steel for the shares it received in the Essar Asia 2013 Transfer by issuing a promissory note to Essar Steel for approximately USD $100,000,000. However, as described below, that promissory note was itself assigned first to Essar Global for what appears to be no consideration whatsoever.

56.     Subsequent to the Essar Asia 2013 Transfer, Essar Steel assigned the promissory note it received from Essar Asia in connection with the Essar Asia 2013 Transfer to Essar Global (the "Essar Global Note Transfer"). On information and belief, Essar Steel did not receive any consideration in exchange for the Essar Global Note Transfer. On information and belief, the Essar Global Note Transfer was directed by Prashant Ruia and Essar Global.

57.     Another asset transferred was Essar Steel's ownership of Essar UAE. Prior to 2015, Essar Steel owned 100% of Essar UAE. However, sometime in 2015 Essar Steel transferred its shares in Essar UAE to another Essar affiliate, Essar Middle East, which now owns 100% of Essar UAE (the "Essar UAE Transfer"). On information and belief, the Essar UAE Transfer was directed by Prashant Ruia and Essar Global.

58.     On information and belief, Essar Steel did not receive consideration for the Essar UAE Transfer.

59.     On information and belief, Essar Steel has entered into other transactions with affiliates for which Essar Steel has not received meaningful value (together with the Essar Asia 2012 Transfer, the Essar Asia 2013 Transfer, the Essar Global Note Transfer, and the Essar UAE Transfer, referred to as the "Transfers").

17

Filed in Ninth Judicial District Court
3/2/2018 1:50 PM
Itasca County, MN

60.     When the dust settled, the Transfers have left Essar Steel with at least USD $2.0 billion of debt (including the ICC Final Award) and no meaningful assets.

61.     Stripped of its significant assets, Essar Steel was left insolvent and unable to satisfy its obligations to legitimate creditors, including ArcelorMittal USA.

### Essar Steel Is An Alter Ego or Mere Instrumentality of Essar Global

62.     The Transfers described above are just one part of a broader scheme in which Essar Global has disregarded corporate form to shield subsidiaries' assets from claims such as ArcelorMittal USA's claim against Essar Steel.

63.     On information and belief, Essar Steel, is a mere alter ego or instrumentality of Essar Global.

64.     As the Transfers demonstrate, Essar Global uses its ability to control its subsidiaries (including Essar Steel) to ensure that each affiliate serves not its own respective shareholders or creditors, but the ultimate interests of Essar Global and the Ruia Family.

65.     As the Transfers also demonstrate, Essar Global CEO Prashant Ruia uses his position on the boards of Essar Global's subsidiaries (including Essar Steel) to ensure that each affiliate serves not its own respective shareholders or creditors, but the ultimate interests of Essar Global and the Ruia Family.

66.     Other directors and officers of Essar Steel have had positions at other Essar Group affiliates.  For example, Ravikant Ruia, Uday Kumar Gujadhur, and Firdhose Coovadia have served on the boards of both Essar Steel and Essar Global.

67.     Essar Global frequently refers to its steel division and the Essar companies that fall under this umbrella simply as "Essar Steel."  Essar Global is at times referred to by

18

Filed in Ninth Judicial District Court
3/2/2018 1:50 PM
Itasca County, MN

the Essar entities as the parent of Essar Steel, and at times Essar Steel is referred to as part of Essar Global.  Essar Steel (then known as Essar Steel Holdings Ltd.) has been referred to in the Essar entities' corporate literature as "the holding company that drives Essar Steel's expansion plans."  According to Essar's corporate literature, Essar Steel is a global producer of steel covering India, Canada, USA, the Middle East, and Asia.  Essar's website previously stated that Essar Steel has operations in Algoma, Canada, and in Minnesota, USA.  In reality, those operations were nominally under the ownership of Essar Steel Algoma, Inc. and Essar Minnesota respectively.

68.    On information and belief, Essar Steel did not observe regular corporate formalities such as holding regular meetings of officers, directors, or members, paying dividends, maintaining separate financial accounts, or maintaining separate books and records.

69.    Essar's website betrays its true corporate structure.  Essar Steel does not have an individual website; instead information concerning the operations and activities of all Essar entities are merged onto "www.essar.com," with little or no delineation between the various companies as separate entities.  The copyright information at the bottom of "www.essar.com" indicates only that it is the copyright of "Essar."

70.    There is a separate website, "www.essarsteel.com," but it similarly describes all of Essar's steel operations under the general heading of "Essar Steel."  Any entity-specific information pertains to Essar India, which is a subsidiary of Essar Asia.  Portions of the "www.essarsteel.com" website describe the various other business entities under Essar

19

Filed in Ninth Judicial District Court
3/2/2018 1:50 PM
Itasca County, MN

Global, including "Essar Power," "Essar Oil," and "Essar Communications."  The copyright claimed on "www.essarsteel.com" is for "Essar Steel."

71.    Essar Steel's financial statements specifically recite that it is managed by its parent Essar Global and had the complete support of Essar Global for all of its operations. Specifically, in its Financial Statements for the year ended 31 March 2009, Essar Steel— then known as Essar Steel Holdings Ltd.—stated the following (emphasis added):

> The Company's [Essar Steel's] objectives while managing capital are to safeguard its ability to continue as a going concern and to provide returns for its shareholders.  The Company [Essar Steel] is a debt geared Company and the equity is attributable to the parents of the Company [Essar Steel].
>
> The capital management process is determined and managed at the holding company [Essar Global] level.  The Company [Essar Steel] is also *assured complete support from ultimate parent [Essar Global] in relation to its operations*.

72.    Moreover, Essar Steel's financial statements for the year ending 31 March 2015 also reflect significant transactions with "Related Parties," which Essar Steel states are "individuals and companies where the individual or company has the ability directly or indirectly to control the other party or exercise significant influence over the other party in making operating and financial decisions or vice versa."

73.    Taken together, all available information indicates that Essar Steel is mere shell or façade dominated and controlled by Essar Global.  The formalities of corporate existence of Essar Steel have been disregarded by Essar Global.  Indeed, the requisite corporate separation between Essar Steel and Essar Global does not exist, and Essar Steel is indistinguishable from its parent Essar Global.

20

74.     The lack of corporate separateness among the Defendants is part and parcel of Essar Group's global operations.  On information and belief, Essar Global operates its affiliates as one, singular entity.

**Essar Global's Operation As A Single Entity
Having De Facto Control Over Its Affiliates
Has Been Confirmed In Other Litigation**

75.     As other litigation involving Essar Global and its affiliates has revealed, Essar Global has treated the entire Essar Group as a singular entity over which it has exercised de facto control.

76.     For example, in an insolvency proceeding in the Ontario Superior Court of Justice involving Essar Steel Algoma Inc. ("Essar Algoma"), an independent monitor appointed by the court observed that Essar Global had "exercised *de facto* control" over Essar Algoma and that Essar Global had "engaged in a course of conduct that consistently preferred the interests of the Essar Group and in particular [Essar Global], the ultimate parent company of the Essar Group" over the interests of its subsidiaries.

77.     The Ontario court largely agreed with the monitor's conclusions.  In an opinion issued last year, the Ontario Superior Court of Justice found that the evidence before it was "overwhelming in substantiating that Essar Global and Essar Capital were calling the shots" for their subsidiary companies on certain large transactions.  The court further determined that Essar Global executives were making strategic decisions over the protest of their affected subsidiaries' independent directors, and to the detriment of those subsidiaries.  The court found that "Essar Global had no intention of living up to its promises."  Further, the court determined that Essar Global acted in bad faith when it used

21

Filed in Ninth Judicial District Court
3/2/2018 1:50 PM
Itasca County, MN

its control over its subsidiaries to quash the subsidiaries' efforts to hold Essar Global accountable for those broken promises.

78.     The monitor's report is substantiated by other accounts of Essar Group's modus operandi.  In a sworn affidavit filed in a New York action against Essar Global last year, an affiant with personal knowledge of the Essar Group's operation alleged that Essar Global freely transfers assets to and among Essar entities.  The affiant asserted that Essar Global's "primary function is to allocate capital (*i.e.*, cash) among and between its many, many subsidiaries.  Where a debtor is distressed financially, inter-affiliate transfers threaten to take value away from creditors and place them elsewhere more beneficial to equity holders (*i.e.*, fraudulent or preferential transfers)."

79.     According to court filings in a Western District of Virginia lawsuit against Essar Global and certain of its affiliates, Essar Group contractors were paid monthly retainers by different Essar Group entities from month to month, with some payments coming from the personal accounts of Madhu Vuppului, who has served as an officer for several Essar Group entities.

80.     Moreover, in the Great Lakes Transmission Limited Partnership lawsuit against Essar Global and certain of its affiliates, Great Lakes alleged that Essar Global operated its subsidiaries as one, indistinguishable entity, strategically shuffling assets from one subsidiary to another and leaving certain subsidiaries insolvent to avoid paying creditors when debts came due.

22

Filed in Ninth Judicial District Court
3/2/2018 1:50 PM
Itasca County, MN

## COUNT I
### Avoidance and Recovery of Transfers
### as Actual Fraudulent Transfers/Conveyances
### (Essar Steel, Essar Global, Essar Asia, and Essar Middle East)

81.    Plaintiff restates and re-alleges paragraphs 1 through 80 of this Complaint as though fully set forth herein.

82.    The Transfers constituted transfers of interest in Essar Steel's property.

83.    The Transfers were made, mediately or immediately, from Defendant Essar Steel to Defendants Essar Global, Essar Asia, and Essar Middle East who received the Transfers as described in this Complaint.

84.    Defendants Essar Global, Essar Asia, and Essar Middle East benefited from the Transfers because they were able to use assets transferred by Essar Steel to fund their respective operations and the operations of its affiliates while avoiding payment to legitimate creditors.

85.    The Transfers were made with actual intent to hinder or delay creditors of Essar Steel.

86.    The Transfers were made to insiders of Essar Steel.

87.    Before the Transfers were made, Essar Steel had been sued and threatened with suit.

88.    Essar Steel removed or concealed assets around the time of the Transfers.

89.    Essar Steel either received no consideration for the property transferred in the Transfers, or the value of the consideration received was not reasonably equivalent to the value of the property transferred in the Transfers.

23

Filed in Ninth Judicial District Court
3/2/2018 1:50 PM
Itasca County, MN

90.     Essar Steel was insolvent or became insolvent shortly after the Transfers were made.

91.     The Transfers occurred shortly before or shortly after a substantial debt was incurred by Essar Steel.

92.     ArcelorMittal USA is a creditor of Essar Steel and holds claims against Essar Steel totaling $1,380,991,356.04 plus interest.

93.     ArcelorMittal USA is entitled under Minn. Stat. §§ 513.44(a)(1) and 513.47 to avoid the Transfers and recover the value thereof from Essar Global, Essar Asia, and Essar Middle East.

## COUNT II
### Avoidance and Recovery of Transfers
### as Constructive Fraudulent Transfers/Conveyances
### (Essar Steel, Essar Global, Essar Asia, and Essar Middle East)

94.     Plaintiff restates and re-alleges paragraphs 1 through 93 of this Complaint as though fully set forth herein.

95.     The Transfers constituted transfers of interest in Essar Steel's property.

96.     The Transfers were made, mediately or immediately, from Defendant Essar Steel to Defendants Essar Global, Essar Asia, and Essar Middle East who received the Transfers as described in this Complaint.

97.     Defendant Essar Global benefited from the Transfers because it was able to use assets transferred by Essar Steel to fund its operations and the operations of its affiliates while avoiding payment to legitimate creditors.

98.     The Transfers were made by Essar Steel without fair consideration.

24

Filed in Ninth Judicial District Court
3/2/2018 1:50 PM
Itasca County, MN

99.    At the time the Transfers were made, Essar Steel was engaged in business or transactions, or was about to engage in business or transactions, for which Essar Steel was substantially undercapitalized.

100.    At the time the Transfers were made, Essar Steel intended to incur, or believed that it would incur, debts that would be beyond its ability to pay as such debts matured.

101.    Essar Steel was insolvent on the dates that each of the Transfers was made, or was rendered insolvent as a result of each of the Transfers.

102.    ArcelorMittal is a creditor of Essar Steel and holds claims against Essar Steel totaling $1,380,991,356.04 plus interest.

103.    ArcelorMittal USA is entitled under Minn. Stat. §§ 513.44(a)(2) and 513.47 to avoid the Transfers and recover the value thereof from Essar Global, Essar Asia, and Essar Middle East.

## COUNT III
### Aiding and Abetting Fraudulent Transfers
### (Prashant Ruia)

104.    Plaintiff restates and re-alleges paragraphs 1 through 103 of this Complaint as thought fully set forth herein.

105.    Prashant Ruia knowingly aided and abetted the fraudulent Transfers of Essar Steel's property.  Plaintiff, as a creditor of Essar Steel, was harmed by the Transfers.

106.    Prashant Ruia knew that the Transfers were made with fraudulent intent. Nonetheless, Prashant Ruia directed that the Transfers be made for the ultimate benefit of Essar Global and the Ruia Family.

25

Filed in Ninth Judicial District Court
3/2/2018 1:50 PM
Itasca County, MN

107.    Prashant Ruia was instrumental in executing the Transfers.  He used his position on the board of Essar Steel to orchestrate the Transfers in furtherance of his own interests and the interests of Essar Global and the Ruia Family and to the detriment of the interests of Essar Steel and its creditors.

## COUNT IV
### Conspiracy to Engage in Fraudulent Transfers
### (Prashant Ruia)

108.    Plaintiff restates and re-alleges paragraphs 1 through 107 of this Complaint as thought fully set forth herein.

109.    Prashant Ruia conspired with Essar Steel, Essar Global, Essar Asia, and Essar Middle East in the fraudulent Transfers of Essar Steel's property.  Plaintiff, as a creditor of Essar Steel, was harmed by the Transfers.

110.    Prashant Ruia knew that the Transfers were made with fraudulent intent and in breach of Essar Steel's duties to its creditors, including ArcelorMittal USA.  Nonetheless, Prashant Ruia directed that the Transfers be made for the ultimate benefit of Essar Global and the Ruia Family.

111.    Prashant Ruia was instrumental in executing the Transfers.  He used his position on the board of Essar Steel to orchestrate the Transfers in furtherance of his own interests and the interests of Essar Global and the Ruia Family and to the detriment of the interests of Essar Steel and its creditors.

26

## COUNT V
### Piercing and/or Lifting the Corporate Veil and/or
### Liability Based on Alter Ego/Mere Instrumentality
### (Essar Global)

112.    Plaintiff restates and re-alleges paragraphs 1 through 111 of this Complaint as thought fully set forth herein.

113.    Essar Global has operated Essar Steel as its alter ego or instrumentality, and the formalities of the corporate existence of Essar Steel have been disregarded.

114.    Essar Steel has been and continues to be undercapitalized in relation to its corporate undertaking.  Essar Global caused Essar Steel to incur guaranties and obligations, including to ArcelorMittal USA, but siphoned funds and assets from Essar Steel to other Essar entities.  These funds were necessary for Essar Steel to support itself and honor its guaranties and obligations.

115.    Essar Global used the Essar Steel corporate form for improper purposes including but not limited to as a way to funnel cash to itself, its subsidiaries, and other entities under its control.

116.    Essar Steel operates as a mere façade or agent of Essar Global for Essar Global to carry out its individual dealings and conceal the true nature of its corporate activities.  Essar Global dominates and controls Essar Steel to such an extent that Essar Steel is in fact an alter ego of Essar Global.

117.    ArcelorMittal USA is an innocent party which has been harmed by Essar Global's use of Essar Steel as its alter ego or instrumentality.  Essar Global has caused Essar Steel to incur significant obligations, including Essar Steel's obligation to ArcelorMittal under the Pellet Sale Agreement, while transferring assets out of Essar Steel to other Essar

27

Filed in Ninth Judicial District Court
3/2/2018 1:50 PM
Itasca County, MN

entities, including the Transfers. As a result, Essar Steel is unable to satisfy its obligations to ArcelorMittal USA and Essar Steel's other creditors. But the assets still remain, shuffled among other Essar entities, all under the control of Essar Global.

118. Under the circumstances, it would be fundamentally unjust and unfair to allow Essar Global to be shielded from liability for damages resulting from Essar Steel's breach of the Pellet Sale Agreement.

119. Under the equitable theories or remedies of piercing or lifting the corporate veil, alter ego, and/or mere instrumentality, the corporate structure of Essar Steel should be disregarded, and Essar Global should be held liable for the damages recoverable by ArcelorMittal USA as a result of Essar Steel's breach of the Pellet Sale Agreement.

## COUNT VI
## Agency Liability
## (Essar Global)

120. Plaintiff restates and re-alleges paragraphs 1 through 119 of this Complaint as though fully set forth herein.

121. In entering into the Pellet Sale Agreement, Essar Steel was acting as the agent of Essar Global.

122. As a result of Defendants' agency relationship, Essar Global is liable for the damages suffered by ArcelorMittal USA as a result of Essar Steel's breach of the Pellet Sale Agreement.

Filed in Ninth Judicial District Court
3/2/2018 1:50 PM
Itasca County, MN

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for relief as follows:

1.      For judgment under Count I avoiding each of the Transfers and permitting ArcelorMittal USA to recover the value of the transfers from Defendants Essar Global, Essar Asia, and Essar Middle East pursuant to Minn. Stat. §§ 513.44(a)(1) and 513.47.

2.      For judgment under Count II, avoiding each of the Transfers and permitting ArcelorMittal USA to recover the value of the transfers from Defendants Essar Global, Essar Asia, and Essar Middle East pursuant to Minn. Stat. §§ 513.44(a)(2) and 513.47.

3.      For judgment under Count III, awarding judgment against Defendant Prashant Ruia in the amount of the Transfers.

4.      For judgment under Count IV, awarding judgment against Defendant Prashant Ruia in the amount of the Transfers.

5.      For judgment under Count V, declaring that Essar Steel is the alter ego of Essar Global and that Essar Global is legally responsible for all of the debts and liabilities of Essar Steel, including the ICC Final Award, and entering Judgment in the amount of the ICC Final Award against Essar Global.

6.      For judgment under Count VI, declaring that Essar Steel was acting as the agent of Essar Global when Essar Steel entered into the Pellet Sale Agreement, and declaring that Essar Global is legally responsible for all of the debts and liabilities arising from the Pellet Sale Agreement, including the ICC Final Award, and entering Judgment in the amount of the ICC Final Award against Essar Global.

7.      Awarding Plaintiff pre- and post-judgment interest, costs, and expenses.

29

Filed in Ninth Judicial District Court
3/2/2018 1:50 PM
Itasca County, MN

8.      Granting such other relief as may be just and proper.

## JURY TRIAL DEMANDED

Plaintiff respectfully demands a trial by jury on all issues so triable.

Dated:  March 2, 2018                              **GREENE ESPEL PLLP**

 *s/Karl C. Procaccini*
Clifford M. Greene, Reg. No. 0037436
Jenny Gassman-Pines, Reg. No. 0386511
Karl C. Procaccini, Reg. No. 0391369
222 S. Ninth Street, Suite 2200
Minneapolis, MN  55402
cgreene@greeneespel.com
jgassman-pines@greeneespel.com
kprocaccini@greeneespel.com
(612) 373-0830

*Attorneys for Plaintiff*

Motions for admission *pro hac vice* to be filed:

**JENNER & BLOCK LLP**

Dean N. Panos, IL Reg. No.  6203600
Reid J. Schar, IL Reg. No. 6243821
Vincent E. Lazar, IL Reg. No. 6204916
Christopher Tompkins, IL Reg. No. 6273167
353 N. Clark Street
Chicago, IL  60654
DPanos@jenner.com
RSchar@jenner.com
VLazar@jenner.com
CTompkins@jenner.com
(312) 222-9350

## ACKNOWLEDGMENT

The undersigned hereby acknowledges that costs, disbursements and reasonable attorney and witness fees may be awarded pursuant to Minn. Stat. § 549.211, subdivision 2, to the party against whom the allegations in this pleading are asserted.

_s/Karl C. Procaccini_
Karl C. Procaccini

31