# Exhibit 3

IN THE SUPREME COURT OF MAURITIUS

(COMMERCIAL DIVISION)

In the matter of:

**Essar Global Fund Limited**, a company incorporated in Cayman Islands, having its registered office at P.O. Box 1350, Clifton House, 75 Fort Street, Grand Cayman KY1 – 1108, Cayman Islands.

**Plaintiff**

v.

**Essar Steel Limited (Administrator Appointed)**, a company incorporated in Mauritius, service to be effected (a) its registered office address at Essar House, 10 Frere, Felix De Valois Street, Port-Louis, Mauritius and (b) on its administrator, Mr. Sattar Hajee Abdoula C/o Grant Thornton Mauritius, 9th Floor, Ebene Tower, 52 Cybercity, Ebene, 72201, Mauritius.

**Defendant**

In the presence of:

1. **VTB Bank (PJSC)**, a company incorporated in Russia, service to be effected at its registered office situate at 12 Presnenskaya Embankment, Tower West, Moscow 123112.

2. **ARCELORMITTAL USA LLC**, having its registered office at 1, South Dearborn Street, 19th Floor, Chicago, Illinois 60603, United States of America.

3. **Rogers Capital Corporate Services Ltd**, having its registered office at No. 5 President John Kennedy Street, 3rd Floor, Rogers House, Port-Louis, Mauritius.

**Co-Defendants**

**PLAINT WITH SUMMONS**

**PARTIES**

3170

1. The Plaintiff ("**EGFL**") is a private company incorporated under the laws of the Cayman Islands. EGFL is, and has at all material times been, the sole shareholder of the Defendant.

2. The Defendant ("**ESL**") is a company registered under the laws of Mauritius and is in voluntary administration. Mr Sattar Hajee Abdoula has been appointed as the Administrator of ESL under Section 215 of Insolvency Act 2009 pursuant to a board meeting of ESL held on 26 March 2019.

3. The Co-Defendant No 1 ("**VTB**") is a company incorporated in Russia which is presently the pledgee over all the shares owned by EGFL in ESL.

4. The Co-Defendant No 2 ("**AMUSA**") is a company incorporated in the United States of America, which has obtained an arbitral award dated 19 December 2017 against ESL under the aegis of the International Chamber of Commerce (the "**Award**"), and a worldwide freezing Order from the English Court against ESL in support thereof (the "**English Proceedings**"). In addition, AMUSA also obtained search and disclosure orders against EGFL as well as Essar Capital Limited (the investment adviser of EGFL) in the Cayman Islands (the "**Cayman Proceedings**").

5. By way of Summons dated 26 April 2019 (Claim no FSD 74 of 2019) AMUSA has also sought from the Grand Court of the Cayman Islands a garnishee order in respect of the indebtedness allegedly owed by EGFL to ESL referred to in paragraph 8 *et seq.* and a freezing order against EGFL to the value of the alleged indebtedness (the "**Cayman Garnishee Proceedings**").

6. The Co-Defendant No 3 ("**Rogers Capital**") is the management company and company secretary of ESL.

7. Pursuant to an Order made by the Bankruptcy Division of the Supreme Court on 02 May 2019 pursuant to section 244 of the Insolvency Act, EGFL has been granted leave to initiate the present proceedings against ESL. EGFL has also obtained leave of the Judge in Chambers on 06 May 2019 pursuant to sections 60 and following of the Courts (Civil

**3171**

Procedure) Act in order to file and serve the present proceedings on VTB and AMUSA outside the jurisdiction.

8. The present proceedings seek the determination of certain issues which have arisen in the English Proceedings and the Cayman Garnishee Proceedings as to the validity of the Corporate Reorganisation (set out in summary below) and, in particular, as to (i) the validity of the Buybacks (so defined) and (ii) whether EGFL is presently indebted to ESL in the sum of approximately US1.5b or otherwise liable to ESL.

9. In summary, in the English Proceedings, AMUSA has contended that by means of the Corporate Reorganisation, ESL dissipated assets in the region of US$1.5b to EGFL and did so at a time when ESL knew it was financially exposed to AMUSA and as a consequence, EGFL may be liable to ESL in respect of the same. The English Court made no findings about whether such a claim exists or whether there was any dissipation as alleged or at all; it was concerned only with what was "arguable" for the purposes of the application before it, and confirmed that whether a claim exists is a matter to be determined in another, more appropriate jurisdiction, which it is averred is Mauritius.

10. In fact, as set out below, the Corporate Reorganisation did not result in any dissipation by ESL of its assets, and further ESL had no legal relationship with AMUSA until **after** the Corporate Reorganisation and was not financially exposed to AMUSA at the time of the Corporate Reorganisation. Further, and without prejudice to the foregoing, at the time of the Corporate Reorganisation and the various transactions effected for that purpose, ESL was solvent under the Companies Act 2001.

11. In any case, EGFL denies each and all of the allegations made or implied by AMUSA aforesaid and accordingly, seeks the appropriate declarations from this Court, being the Court which has jurisdiction in relation to the Buybacks and over ESL.

## THE CORPORATE REORGANISATION, PROMISSORY NOTES AND BUYBACKS

*The Corporate Reorganisation*

12. ESL, a wholly owned subsidiary of EGFL, acted at all material times as an intermediate holding company for part of the wider Essar Group's steel business.

3172

13. In early 2012, ESL primarily held three assets in the form of investments in Essar Steel India Limited ("**ESIL**"), Essar Steel Minnesota LLC ("**Essar Minnesota**") and Essar Steel Algoma Inc ("**Essar Algoma**"). ESIL, Essar Minnesota and Essar Algoma are incorporated in India, the USA and Canada respectively.

14. In 2012, EGFL decided that ESIL, Essar Minnesota and Essar Algoma should cease being held under a single holding company (namely, ESL) and that each should be held under separate holding structures, in order to facilitate capital raising and to provide flexibility to monetize each of those assets.

15. Accordingly, and for these stated (and no other) purposes, on 30 March 2012, EGFL approved an intra-group solvent re-organisation exercise in the corporate structure under its steel vertical (the "**Corporate Reorganisation**"). EGFL and its subsidiaries were each entitled to undertake the Corporate Reorganisation with the consent of EGFL's lenders, which in principle consent was provided by Allen & Overy, the legal advisors of EGFL's lenders on 12 June 2012.

*Transfers of shares in ESIL and issues of promissory notes to ESL*

16. To implement the Corporate Reorganisation, on 29 June 2012, ESL transferred 1,910,255,183 shares (equivalent to a 72.72% stake) in ESIL (the "**First Tranche of ESIL Shares**") to an affiliate company Essar Steel Asia Holdings Limited ("**ESAHL**"), then known as Essar Resources Mauritius Limited. The transfer of the First Tranche of ESIL Shares from ESL to ESAHL is hereinafter referred to as the "**First ESIL Transfer**". ESAHL is a company incorporated in Mauritius.

17. As consideration for the First ESIL Transfer, ESAHL issued a promissory note dated 29 June 2012 (the "**First Promissory Note**") to and in favour of ESL for an amount of USD 1,388,530,158 (one billion three hundred and eighty-eight million five hundred and thirty thousand and one hundred and fifty-eight United States Dollars). Following the First ESIL Transfer, the share register of ESIL was updated to reflect ESAHL as the shareholder of the First Tranche of ESIL Shares.

3173

18. Further, on 26 August 2013, ESL transferred 118,678,842 shares (equivalent to a 4.23% stake) in ESIL (the "**Second Tranche of ESIL Shares**" and, together with the First Tranche of ESIL Shares, the "**ESIL Shares**") to ESAHL.  The transfer of the Second Tranche of ESIL Shares from ESL to ESAHL is hereinafter referred to as the "**Second ESIL Transfer**" and, together with the First ESIL Transfer, the "**ESIL Transfers**".

19. As consideration for the Second ESIL Transfer, ESAHL issued a promissory note dated 26 August 2013 (the "**Second Promissory Note**" and, together with the First Promissory Note, the "**Promissory Notes**") to and in favour of ESL for an amount of USD 99,450,000 (ninety-nine million four hundred and fifty thousand United States Dollars). Following the Second ESIL Transfer, the share register of ESIL was updated to reflect ESAHL as the shareholder of the Second Tranche of ESIL Shares.  ESAHL has never held any other asset other than its shares in ESIL.

*Assignments of the Promissory Notes*

20. Further, and in furtherance of the Corporate Reorganisation, the following transactions took place simultaneously in respect of the First Promissory Note on 23 March 2013:

    (a) In consideration of a future capital reduction, ESL assigned to EGFL all its rights and interests in the First Promissory Note, and EGFL accepted such assignment.  ESL waived all its claims against ESAHL under the First Promissory Note;

    (b) In consideration of equity shares to be issued by Essar Steel Mauritius Limited (another company incorporated in Mauritius and hereinafter referred to as "**ESML**"), EGFL assigned its rights and interests in the First Promissory Note to ESML.  EGFL waived all its rights against ESAHL under the First Promissory Note; and

    (c) In consideration of equity shares to be issued by ESAHL to ESML, ESML assigned its rights and interests in the First Promissory Note to ESAHL.  ESML waived all its rights against ESAHL under the First Promissory Note. The First Promissory Note having been assigned to its issuer, ESAHL, it was automatically cancelled.

21. Yet further, and in furtherance of the Corporate Reorganisation, the following transactions took place in respect of the Second Promissory Note on 26 August 2013 and

**3174**

05 November 2013:

(a) In consideration of a future capital reduction, ESL assigned to EGFL all its rights and interests in the Second Promissory Note, and EGFL accepted such assignment. ESL waived all its claims against ESAHL under the Second Promissory Note;

(b) In consideration of equity shares to be issued by ESML, EGFL assigned its rights and interests in the Second Promissory Note to ESML. EGFL waived all its rights against ESAHL under the Second Promissory Note; and

(c) In consideration of equity shares to be issued by ESAHL to ESML, ESML assigned its rights and interests in the Second Promissory Note to ESAHL. ESML waived all its rights against ESAHL under the Second Promissory Note. The Second Promissory Note having been assigned to its issuer, ESAHL, it was automatically cancelled.

*Share Buy-Backs*

22.  Further, as a yet further part of the Corporate Reorganisation, it was agreed between EGFL and ESL that:

(a) The consideration for the assignment of the First Promissory Note from ESL to EGFL would comprise the surrender and cancellation of 1,388,530,158 shares held by EGFL in ESL and that such assignment, surrender and cancellation of those 1,388,530,158 shares (the "**First Buyback Shares**") would take the form of a buy-back by ESL from EGFL (the "**First Buyback**"); and

(b) The consideration for the assignment of the Second Promissory Note from ESL to EGFL would comprise the surrender and cancellation of 99,450,000 shares held by EGFL in ESL and that assignment, surrender and cancellation of those 99,450,000 shares (the "**Second Buyback Shares**" and, together with the First Buyback Shares, the "**Buyback Shares**") would take the form of a further buy-back by ESL from EGFL (the "**Second Buyback**" and, together with the First Buyback, the "**Buybacks**").

3175

23. Together, the contracts recording ESL and EGFL's agreements to enter into the transactions outlined at paragraphs 20, 21 and 22 above dated 23 March 2013, 26 August 2013 and 05 November 2013 are referred to hereinafter as the "**Contracts**".

24. Further, as part of and as a condition of their consent to the Corporate Reorganisation, the lenders of EGFL were granted a pledge over the shares issued by ESML to EGFL and the shares issued by ESAHL to ESML, thereby giving the lenders security over the equity value of the ESIL shares. As pleaded above, the present lender to EGFL is VTB, and VTB holds the pledge over the aforesaid shares.

25. The surrender of the Buyback Shares can be effected with the consent of VTB. At all material times, ESL has been aware of and has agreed to the said shares remaining pledged to EGFL's lenders, including VTB, to which pledge (dated March 2008) ESL is and has at all material times been a party. Further, at all material times, EGFL and ESL have acted in a manner consistent with the Corporate Reorganisation having been properly effected and at no material time has ESL sought the surrender to it and/or the cancellation of the Buyback Shares. If required, EGFL anticipates that VTB will provide its consent to the release of the Buyback Shares in the event that this Court grants the relief sought by EGFL.

26. By its representations and/or conduct amounting to representations, ESL has at all material times led and induced EGFL to believe that the Contracts are valid. EGFL has relied and acted upon those representations and in so doing changed its position. ESL is therefore estopped from claiming differently. Following the representations and/or conduct amounting to representations of ESL, EGFL has further assigned the Promissory Notes to third parties and damage and prejudice will be caused if ESL is allowed at this stage to claim that the Contracts are not valid.

27. The Corporate Reorganisation did not result in any dissipation of ESL's assets for the reasons outlined above and, further, on the bases that:

    (a) On 02 August 2017, the Ahmedabad Bench of The National Company Law Tribunal of India admitted petitions filed by State Bank of India and Standard Chartered Bank for initiating insolvency proceeding under Insolvency and Bankruptcy Code against

ESIL. Those bankruptcy proceedings are ongoing;

(b) ESAHL's principal asset at all material times has been its shareholding in ESIL.

(c) ESIL's underlying value has been impaired to nil in the books of EASHL as a result of ESIL entering bankruptcy.

28. Moreover, at the time of the Corporate Reorganisation, ESL had no legal relationship with AMUSA. In particular, but without limitation, ESL only assumed a legal relationship with AMUSA on and with effect from 10 January 2014 when it became party to an amended and restated pellet sale and purchase agreement, which was after the ESIL Transfers, after the Promissory Notes were assigned to EGFL and after the Buybacks had been agreed.

29. In the premises, and contrary to the allegations made or implied by AMUSA in the English Proceedings:

(a) The Contracts are and have at all material times been valid contracts entered into between ESL and EGFL on 23 March 2013, 26 August 2013 and 05 November 2013; and

(b) There is no debt due and owing by EGFL to ESL, or any other liability of EGFL to ESL, arising from the Corporate Reorganisation.

**PRAYERS.**

30. In the circumstances aforesaid, EGFL moves this Honourable Court for a judgment:

A. holding and decreeing that the Contracts dated 23 March 2013, 26 August 2013 and 05 November 2013 are valid and that the Buyback Shares should necessarily be cancelled;

B. holding and decreeing that ESL has never had, and has no, monetary claim whatsoever against EGFL for or in connection with the consideration for the

Buybacks or any entitlement to any other relief; and

C. ordering ESL and Rogers Capital to effect the rectification of the share register of ESL so that:

(i)    The First Buyback Shares are recorded as having been cancelled with retrospective effect from 23 March 2013; and

(ii)    The Second Buyback Shares are recorded as having been cancelled with retrospective effect from 05 November 2013.

D. granting such further or other relief as the Court considers necessary and appropriate.

TAKE NOTICE, You, the Defendant, and You, the Co-Defendants, that You are by these presents notified that,

(i)  you must communicate to the Court your stand regarding the above Plaint with Summons through the e-filing system of the Court, and this within the time-limit set out in the document attached to the present Plaint with Summons and issued by the Court;

(ii) in case you have any question or query regarding the e-filing system or the way of informing the Court of your stand, you should address yourself to the Supreme Court (Commercial Division), on or before the returnable date set out in the said attached document issued by the Court;

(iii) should you fail to inform the Court through the e-filing system of your said stand within the time-limit set out in the attached document issued by the Court, judgment may be taken against You in terms of the present Plaint with Summons.

TAKE FURTHER NOTICE, You, the abovenamed Defendant and You, the abovenamed Co-Defendants, that the Plaintiff in this cause, whilst reserving its rights to tender other documents if need be, proposes to adduce in evidence the documents hereunder specified,

**3178**

and that same may be inspected by You, the Defendant and You, the Co-Defendants, your attorneys or agents, at the office of the undersigned Attorney at Law on office days during office hours, and that You, the Defendant and You, the Co-Defendants, will be required to admit that such of the said documents as are specified to be originals were respectively written, signed, or executed, as they purport respectively to have been; that such documents as are specified as copies are true copies, and that such documents as are stated to have been served, sent, or delivered, were so served, sent or delivered respectively; saving all just exceptions to the admissibility of all such documents as evidence in this cause.

LIST OF DOCUMENTS

1    Court Order dated 02 May 2019;

2    Court Order dated 06 May 2019.

Under all legal reservations.
Dated at Port Louis, this 6th day of May, 2019.

Dave BOOLAUKY

BLC Robert & Associates

Of No. 8, Georges Guibert Street, Port Louis.

PLAINTIFF'S ATTORNEY

To/

The Defendant and the Co-Defendants abovenamed and styled

3179