**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

ARCELORMITTAL NORTH AMERICA
HOLDINGS LLC

        *Plaintiff,*

    v.

ESSAR GLOBAL FUND LIMITED,

        *Defendant,*

    and

MESABI METALLICS COMPANY LLC
f/k/a ESSAR STEEL MINNESOTA LLC,

        *Garnishee.*

Case No.: 21-cv-06975-KPF

Honorable Katherine Polk Failla

**DECLARATION OF AIDAN ALEXANDER O'ROURKE**

I, Aidan Alexander O'Rourke, declare under penalty of perjury as follows:

1.    I am partner of the law firm Quinn Emanuel Urquhart & Sullivan LLP, and work in the firm's London office. I am a solicitor of the Senior Courts of England and Wales.

2.    I submit this Declaration in support of the motion of Essar Global Fund Limited ("Essar Global") and Mesabi Metallics Company LLC to dismiss the complaint of ArcelorMittal North America Holdings LLC ("AMNAH") in the above-captioned action for *forum non conveniens* and adjudicative comity.

3.    I represent Essar Global in the action brought by ArcelorMittal USA LLC ("AMUSA") in the High Court of Justice, Business and Property Courts of England and Wales, Queen's Bench Division, Commercial Court (the "Commercial Court") on 30 December 2019 against Essar Global, Essar Capital Limited, Essar Capital Services (UK) Limited, and seven

individual defendants: Ravi Ruia, Prashant Ruia, Sushil Baid, Andrew Wright, Joseph Seifert, Uday Kumar Gujadhur, and Nigel Bell (the "English Action"). The claims against Mr Seifert have since been dismissed, and the claims against Mr Bell have since been released. Mr Wright, Essar Capital Services (UK) Limited and Mr Gujadhur have each applied to have the claims against them dismissed, which applications are listed to be heard on 13 April 2022. On 24 March 2021, AMNAH was substituted as Claimant in the English Action following AMUSA's assignment of its claims to AMNAH.

4.      Given my representation of Essar Global in the English Action, I have personal knowledge of the English Action and its relationship to this action. Nothing in this statement is intended to constitute a waiver of privilege by Essar Global or any other clients that I represent in the English Action.

5.      A true and correct copy of AMNAH's Re-Amended Particulars of Claim in the English Action is attached hereto as Exhibit 1.

6.      AMNAH's claims in the English Action are brought under a theory of unlawful means conspiracy, specifically that the Defendants (or some of them) combined to harm AMUSA's interests, and that the combination involved the use of unlawful means. The alleged conspiracy is predicated on the same alleged transactions and change in accounting treatment at issue in this action. As in this action, AMNAH alleges in the English Action that Essar Steel fraudulently transferred $1.5 billion to Essar Global by waiving a $1.5 billion debt owed by Essar Global to Essar Steel, as evidenced by a change in accounting treatment in Essar Steel's 2016 financial statements, in order to prevent AMNAH from collecting an arbitral award issued by the International Chamber of Commerce ("ICC") against Essar Steel for breach of an agreement to supply iron ore pellets to AMUSA. AMNAH further alleges, as in this action, that

Essar Global improperly dominated and controlled Essar Steel to effectuate the alleged fraudulent transfer. As AMNAH alleges in its Re-Amended Particulars of Claim: "Defendants … agreed or combined together with a common intention to injure or cause loss to [AMUSA] by putting [Essar Steel] in a position in which it lacked the financial resources to pay any substantial liability under the Amended Pellet Sale Agreement and/or ICC Award." Ex. 1 ¶ 5.

7.    AMNAH further acknowledges in its Re-Amended Particulars of Claim that the alleged "unlawfulness" of the alleged fraudulent transfer scheme is governed by Mauritian law: "[The] release[] [of Essar Steel's] sole shareholder from a $1.5 billion liability for nothing in return … constituted … [a] breach by [Essar Steel] of sections 61(2), 62(5)(b) and/or 68(4) of the Mauritius Companies Act; and … [a] breach … [of] duty under section 143(1)(c) of the Mauritius Companies Act." Ex. 1 ¶¶ 52.1, 52.2.

8.    I understand that AMNAH has demanded a jury trial in this action. A jury trial is unavailable to AMNAH in the English Action because English courts do not, as a general rule, conduct jury trials in civil cases unless they involve allegations of libel, slander, malicious prosecutions, fraud, or false imprisonment.

9.    On 30 December 2019, AMUSA applied for a worldwide freezing injunction in the English Action against Essar Global, Ravi Ruia, and Prashant Ruia. The Commercial Court, part of the Queen's Bench Division of the High Court, conducted a two-day hearing of the application on 3-4 March 2020 at which it considered 12 witness statements, 5 affidavits, and thousands of pages of documentary evidence.

10.    The High Court refused the application in an 81-page judgment handed down on 30 March 2020. A true and correct copy of the judgment is attached hereto as Exhibit 2. Based on its extensive review of the evidence, the High Court concluded that AMUSA "ha[d] not

shown a good arguable case on the merits of its substantive claim," a minimal standard that requires a case "more than barely capable of serious argument, and yet not necessarily one which the Judge believes to have a better than fifty percent chance of success." Ex. 2 ¶¶ 211, 267(i). The High Court found that (a) AMUSA's "case that the restructuring in 2012 and 2013 involving the removal of Essar Steel India from Essar Steel was done pursuant to an unlawful means conspiracy strains credibility," *id.* ¶ 214(i); (b) "[t]he allegation that the assignment of by far the larger of the two promissory notes to [Essar Global] in March 2013 was designed to evade liabilities to [AMUSA] lacks any real cogency" and "[t]he same applies to the assignment of the smaller note in November 2013," *id.* ¶¶ 214(ii), 214(iii); and (c) AMUSA's "case relying on the change of accounting treatment in 2016 is inconsistent with its overall case of conspiracy, and in any event [the High Court] [did] not consider [AMUSA] to have put forward any realistic case that the change amounted to a dissipation or attempted dissipation of an asset, let alone of a clear debt claim," *id.* ¶ 214(iv).

11.    On 20 April 2020, AMUSA was denied permission to appeal the High Court's judgment by the Court of Appeal Civil Division, which held "[t]he appeal has no real prospect of success" and explained that the High Court "was entitled to consider that the evidence did not establish a cogent case that the restatement amounted to a dissipation or attempted dissipation." A true and correct copy of the 20 April 2020 Order of the Court of Appeal Civil Division is attached hereto as Exhibit 3.

12.    Pursuant to a consent order agreed-upon by the parties and entered by the High Court on 23 November 2021, the English Action is scheduled for agreement on the List of Issues for Disclosure (the scope of discovery) by 1 March 2022; and Extended Disclosures (discovery productions) by 19 August 2022, 16 September 2022, and 14 October 2022. These deadlines

would have been set earlier (or already have passed) had AMNAH not delayed the English Action by repleading its entire case, obtaining new counsel, and requesting numerous extensions to existing deadlines.

13.    Further, the High Court has now fixed hearing dates in the English Action as follows: a hearing of Mr Gujadhur's, Mr Wright's and Essar Capital Services (UK) Limited's applications to dismiss on 13 April 2022, a case management conference on 8 June 2022, and a pre-trial review on 5 October 2023.  The trial of the English Action has been fixed to commence on 13 November 2023, with a time estimate of 5 weeks.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: 14 JANUARY 2022
BRIXTON, LONDON.

_____
Aidan Alexander O'Rourke